KEKER, VAN NEST & PETERS LLP
MICHELLE YBARRA - # 260697
mybarra@keker.com
EDWARD A. BAYLEY - # 267532
ebayley@keker.com
DEEVA SHAH - # 319937
dshah@keker.com
SPENCER MCMANUS - # 322824
smcmanus@keker.com
KEVIN SONG - # 325259
ksong@keker.com
LIAM BROWN - # 347518
liambrown@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:      415 397 7188

Attorneys for Defendant ROBLOX CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AUSTIN BEAULIER, individually and on behalf of all those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ROBLOX CORPORATION,<br><br>Defendant. | Case No. 3:26-cv-02642-JSC<br><br>**DEFENDANT ROBLOX CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:          August 20, 2026<br>Time:        10:00 a.m.<br>Dept.:        Courtroom 8 – 19th Floor<br>Judge:       Hon. Jacqueline Scott Corley<br><br>Date Filed: March 26, 2026<br><br>Trial Date:  Not Set |

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL BACKGROUND ...................................................................................2

    A.    Roblox and Cube 3D empower creators and users to build, share, and experience immersive 3D worlds...............................................................2

    B.    Roblox allegedly trained Cube 3D on 1.5 million 3D models sourced from licensed datasets, public datasets, and Roblox users who opted in for training. ....................................................................................................3

    C.    Plaintiff uploaded his 3D models to publicly available repositories and chose permissive licenses to govern his works—until Objaverse-XL was released. ..................................................................................................4

    D.    Two years later, Plaintiff sued Roblox for DMCA violations. ...............5

III.  LEGAL STANDARD...............................................................................................6

IV.   ARGUMENT............................................................................................................7

    A.    Plaintiff Fails to State a Claim for Relief Under Rule 12(b)(6).............7

        1.    Plaintiff fails to plausibly allege actionable removal of CMI.....................7

            a.    The Complaint fails to plausibly allege "removal" of CMI (Counts I and II)...........................................................7

            b.    The Complaint fails to plausibly allege Roblox "intended" to remove CMI (Count I). ............................................10

        2.    Plaintiff Fails to Allege Distribution of His Works Under Section 1202(b)(3) (Count II). ..............................................................12

        3.    Plaintiff fails to allege any predicate infringement that Roblox's alleged CMI removal would induce, enable, facilitate, or conceal (Counts I and II)................................................................................13

    B.    Plaintiff Lacks Standing Under Rule 12(b)(1)......................................15

V.    CONCLUSION......................................................................................................17

ROBLOX'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:26-cv-02642-JSC

6213845

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A'Lor Int'l, Ltd. v. Tapper Fine Jewelry, Inc.*,
2012 WL 12921035 (C.D. Cal. Aug. 8, 2012)............................................................................8

*Andersen v. Stability AI Ltd.*,
700 F. Supp. 3d 853 (N.D. Cal. 2023) ....................................................................................9

*Andersen v. Stability AI Ltd.*,
744 F. Supp. 3d 956 (N.D. Cal. 2024) ..................................................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................................6

*Asia Econ. Inst. v. Xcentric Ventures LLC*,
2011 WL 2469822 (C.D. Cal. May 4, 2011) .........................................................................10

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................................6

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)..............................................................................................................16

*Doe 1 v. GitHub, Inc.*,
2024 WL 235217 (N.D. Cal. Jan. 22, 2024)...............................................................2, 6, 10

*Doe 1 v. GitHub, Inc.*,
672 F. Supp. 3d 837 (N.D. Cal. 2023) ..................................................................................17

*Dolls Kill, Inc. v. Zoetop Bus. Co.*,
2022 WL 16961477 (C.D. Cal. Aug. 25, 2022)......................................................................8

*Fayer v. Vaughn*,
649 F.3d 1061 (9th Cir. 2011) ...............................................................................................6

*Food & Drug Admin. v. All. for Hippocratic Med.*,
602 U.S. 367 (2024)..............................................................................................................17

*Free Speech Sys., LLC v. Menzel*,
390 F. Supp. 3d 1162 (N.D. Cal. 2019) .................................................................................9

*Frost-Tsuji Architects v. Highway Inn, Inc.*,
2015 WL 263556 (D. Haw. Jan. 21, 2015), *aff'd*, 700 F. App'x 674 (9th Cir.
2017) ..............................................................................................................................10, 13

*Harrington v. Pinterest*,
2022 WL 4348460 (N.D. Cal. Sept. 19, 2022) .......................................................................8

*Harrington v. Pinterest, Inc.*,
    2021 WL 4033031 (N.D. Cal. Sept. 3, 2021) ..........................................................................15

*Kelly v. Arriba Soft Corp.*,
    77 F. Supp. 2d 1116 (C.D. Cal. 1999), *aff'd in part, rev'd in part on other
    grounds*, 336 F.3d 811 (9th Cir. 2003) ...................................................................................11

*Logan v. Meta Platforms, Inc.*,
    2023 WL 3668520 (N.D. Cal. May 24, 2023) ...............................................................2, 8, 11

*Logan v. Meta Platforms, Inc.*,
    636 F. Supp. 3d 1052 (N.D. Cal. 2022) ..................................................................................10

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ...............................................................................................................16

*Mango v. BuzzFeed, Inc.*,
    970 F.3d 167 (2d Cir. 2020) ......................................................................................................7

*Manzanarez v. Madera Collection Servs.*,
    722 F. Supp. 3d 1074 (E.D. Cal. 2024) ..................................................................................16

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025 (9th Cir. 2008) ...................................................................................................6

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008) ...................................................................................................6

*New York Times Co. v. Microsoft Corp.*,
    777 F. Supp. 3d 283 (S.D.N.Y. 2025) ................................................................................9, 14

*O'Neal v. Sideshow, Inc.*,
    583 F. Supp. 3d 1282 (C.D. Cal. 2022) ...............................................................................7, 15

*Raw Story Media, Inc. v. OpenAI, Inc.*,
    756 F. Supp. 3d 1 (S.D.N.Y. 2024) ........................................................................................15

*Rivera v. Invitation Homes, Inc.*,
    2022 WL 504161 (N.D. Cal. Feb. 18, 2022) .............................................................................6

*Robert L. Stark Enters., Inc. v. Neptune Design Grp., LLC*,
    2017 WL 1345195 (N.D. Ohio Apr. 12, 2017) .......................................................................13

*SellPoolSuppliesOnline.com LLC v. Ugly Pools Arizona, Inc.*,
    344 F. Supp. 3d 1075 (D. Ariz. 2018), *aff'd*, 804 F. App'x 668 (9th Cir. 2020) .....................10

*Spokeo v. Robins*,
    578 U.S. 330 (2016) ............................................................................................................6, 16

iii

*Stevens v. Corelogic, Inc.*,
194 F. Supp. 3d 1046 (S.D. Cal. 2016), *aff'd*, 899 F.3d 666 (9th Cir. 2018) ..........................11

*Stevens v. Corelogic, Inc.*,
899 F.3d 666 (9th Cir. 2018) ...............................................................................7, 14

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)..............................................................................................15, 16

*Tremblay v. OpenAI, Inc.*,
716 F. Supp. 3d 772 (N.D. Cal. 2024) ...........................................................9, 12, 14

**Statutes**

17 U.S.C. § 411 ...............................................................................................................13

17 U.S.C. § 412 ...............................................................................................................13

17 U.S.C. § 1202(b)(1) ............................................................................................ *passim*

17 U.S.C. § 1202(b)(3) ............................................................................................ *passim*

17 U.S.C. § 1203(c) ...............................................................................................10, 13

**Other Authorities**

Deitke, et al., *Objaverse-XL: A Universe of 10M+ 3D Objects* (July 11, 2023)
(arXiv:2307.05663)..................................................................................................3

Fed. R. Civ. Proc. 12(b)(1) ..........................................................................................6, 15

Fed. R. Civ. Proc. 12(b)(6) ...........................................................................................6, 7

Foundation AI Team Roblox, *Cube: A Roblox View of 3D Intelligence* (March 19,
2025) (arXiv:2503.15475) ......................................................................................3

6213845

**ROBLOX'S NOTICE OF MOTION AND MOTION TO DISMISS**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on August 20, 2026 at 10:00 a.m., or as soon thereafter as this matter may be heard before the Honorable Jacqueline Scott Corley, in Courtroom 8 of the Phillip Burton Federal Building, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Roblox Corporation will and hereby does move to dismiss the complaint filed by Plaintiff Austin Beaulier in its entirety and with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  This motion is based on this Notice of Motion, the following memorandum of points and authorities, all pleadings and papers on file or to be filed in this action, counsel's arguments, and any other matters properly before the Court.

## STATEMENT OF ISSUES TO BE DECIDED

Pursuant to Civil L.R. 7-4(a)(3), Roblox Corporation states that this motion to dismiss raises the following issues to be decided by the Court:

1.      Whether Count I (Violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1202(b)(1); Removal of Copyright Management Information ("CMI")) should be dismissed with prejudice for:

        i)      Lack of subject matter jurisdiction and Article III standing;

        ii)     Failure to plausibly allege any removal of CMI from identical copies of Plaintiff's specific works;

        iii)    Failure to plausibly allege that Roblox had intentionally removed CMI;

        iv)     Failure to plausibly allege or identify any underlying infringement that was induced, enabled, facilitated, or concealed by any purported CMI removal by Roblox.

2.      Whether Count II (Violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1202(b)(3); Distribution of Works Knowing CMI Has Been Removed) should be dismissed with prejudice for:

        i)      Lack of subject matter jurisdiction and Article III standing;

        ii)     Failure to plausibly allege any removal of CMI;

        iii)    Failure to plausibly allege that Roblox had access to data containing Plaintiff's works;

        iv)     Failure to plausibly allege distribution of Plaintiff's works with knowledge that Plaintiff's CMI had been removed; and

        v)      Failure to plausibly allege or identify any underlying infringement that was induced, enabled, facilitated, or concealed by Roblox's purported distribution of Plaintiff's works with CMI removed.

6213845

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Austin Beaulier alleges that he created 3D models and made them available online for free under a permissive license.  Third parties then predictably incorporated these 3D models into larger datasets, including Objaverse-XL.  But now, in this lawsuit—like multiple other lawsuits Beaulier has filed against different technology companies in this District and elsewhere[1]—Beaulier accuses Roblox Corporation ("Roblox") of illegally using portions of Objaverse-XL to train Roblox's Cube 3D generative artificial intelligence ("AI") model.  To be clear, Beaulier has not sued for copyright infringement, nor can he; Beaulier does not allege that he registered for copyright protection for any of his works.  Instead, he tries to shoehorn his grievances with the AI training process into violations of section 1202 of the Digital Millennium Copyright Act ("DMCA").  But section 1202 is an anti-piracy statute.  It targets ***intentional*** tampering with copyright management information ("CMI").  It is not an all-purpose attribution statute; it does not impose liability whenever CMI is not preserved, nor does it enforce vague restrictions in permissive licensing regimes.  The Complaint therefore fails to satisfy ***any*** of section 1202's statutory elements or double-scienter requirements necessary to state a claim under the DMCA.  Beaulier's contrived claims must be dismissed with prejudice.

The Complaint is fatally deficient for several reasons.  ***First***, the Complaint does not (and cannot) allege any affirmative act of CMI "removal" by Roblox.  Beaulier concedes that any alleged separation of CMI would have been an "inherent consequence" of converting 3D objects into "machine-learning training inputs."  Compl. ¶¶ 95–103.  But section 1202(b) prohibits only ***removal and alteration*** of CMI.  It does not prohibit the failure to preserve CMI, nor does it create liability when a format conversion inherently cannot retain metadata—especially when (as here) plaintiff fails to plausibly allege that Roblox actually trained on his works at all.  ***Second***, use of a uniform technical process that treats CMI and non-CMI content alike does not plead

---

[1] *Beaulier v. Meta Platforms*, No. 3:26-cv-02632-CRB (N.D. Cal.); *Beaulier v. NVIDIA Corp.*, No. 5:26-cv-02647-EKL (N.D. Cal.); *Beaulier v. Microsoft Corp.*, No. 2:26-cv-01031-JNW (W.D. Wash.).

*intentional* removal.[2]  ***Third,*** the Complaint alleges no distribution of identical works, as section 1202(b)(3) requires.[3]  ***Finally,*** the Complaint identifies no infringement that any alleged CMI removal would induce, enable, facilitate, or conceal—a required element of both Counts.

Plaintiff also lacks Article III standing.  His alleged injuries are speculative and attributable to third parties whose actions predated any of Roblox's alleged conduct by years.

These statutory and constitutional defects are incurable.  The Court should dismiss both claims with prejudice.

## II.    FACTUAL BACKGROUND

### A.    Roblox and Cube 3D empower creators and users to build, share, and experience immersive 3D worlds.

Roblox is an immersive online gaming and content-creation platform.  For content creators, Roblox offers software, web infrastructure, and a marketplace enabling them to build, script, test, publish, and operate engaging virtual experiences and games.  For users, it provides a broad range of creator-generated social, entertainment, educational, and creative content.  On any given day, Roblox connects over 100 million global users across its platform—developers with gamers, users with friends.

Roblox offers every user the chance to become a creator.  "Roblox Studio" is a comprehensive set of free tools and services that enables creators to build entire worlds and customize models, plugins, audio, fonts, images, meshes, and video for their experiences.  By reducing the upfront costs for new creators, Roblox Studio has enabled the creator community to grow and flourish across a wide range of professional capabilities and backgrounds, from students and hobbyists to full-time studios.

In March 2025, Roblox announced Cube 3D, its latest initiative to eliminate the technological barriers to entry for aspiring new creators.  Cube 3D is a groundbreaking generative

---

[2] *See Logan v. Meta Platforms, Inc.*, 2023 WL 3668520 (N.D. Cal. May 24, 2023) (uniform process for cropping photos, which incidentally cut out the plaintiff's signature, did not give rise to a plausible inference of intentional CMI removal).

[3] *See Doe 1 v. GitHub, Inc.*, 2024 WL 235217, at *8 (N.D. Cal. Jan. 22, 2024) ("Section 1202(b) claims lie only when CMI is removed or altered from an identical copy of a copyrighted work.")

ROBLOX'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:26-cv-02642-JSC

6213845

AI model for 3D object generation. Compl. ¶ 108. As the Complaint acknowledges, this "foundation-scale generative model[]" is "capable of automatically producing new 3D objects, environments, and digital assets." *Id*. ¶¶ 82–83. Put simply, Cube 3D lets developers generate virtual 3D objects and experiences at the push of a button, using only a short text description of what they want.

**B.      Roblox allegedly trained Cube 3D on 1.5 million 3D models sourced from licensed datasets, public datasets, and Roblox users who opted in for training.**

As the Complaint itself describes, 3D artists have been creating, uploading, and distributing digital 3D models on publicly available platforms for over two decades. Compl. ¶¶ 33–34. In recent years, researchers and technology companies have assembled datasets of 3D models from these publicly available repositories "in order to train artificial intelligence systems capable of generating new 3D content." *Id*. ¶ 75. One such dataset is Objaverse-XL, an academic dataset containing over 10 million 3D assets compiled by a coalition of independent academic researchers in 2023.[4] *Id*. ¶¶ 76–77. The contents of Objaverse-XL were sourced from several publicly accessible repositories, such as Sketchfab, Thingiverse, Polycam, and GitHub. *Id*. ¶¶ 77, 78.

The Complaint alleges that, "[a]ccording to Roblox's public statements and technical disclosures, Cube 3D was trained on approximately 1.5 million 3D assets." Compl. ¶ 108. Those same disclosures also revealed that the 1.5 million assets were sourced from "a combination of licensed and publicly available datasets," as well as "free data assets that are available in Roblox Creator Store that are opted in for training."[5] And as the Complaint concedes, some of these assets were merely "derived in part from the Objaverse dataset." *Id*. ¶ 108.

According to the Complaint, in developing Cube 3D, Roblox purportedly "copied and

---

[4] Objaverse-XL contains more than 10 million 3D objects offered to the public under royalty-free Creative Commons licenses via a collaboration among various academic and other research institutions, including the Allen Institute for AI, University of Washington, Columbia University, Stability AI, LAION, and Caltech. *See* Deitke, et al., *Objaverse-XL: A Universe of 10M+ 3D Objects* (July 11, 2023) (arXiv:2307.05663), https://arxiv.org/abs/2307.05663.

[5] *See* Foundation AI Team Roblox, *Cube: A Roblox View of 3D Intelligence* (March 19, 2025) (arXiv:2503.15475), https://arxiv.org/abs/2503.15475v1.

processed" those assets "through machine-learning preprocessing pipelines designed to convert raw 3D assets into inputs suitable for training generative artificial intelligence systems." *Id.* ¶ 144. "Through this process," *i.e.*, converting raw 3D assets into inputs suitable for AI training, Plaintiff alleges that Roblox "intentionally removed, altered, or caused the removal or alteration of CMI associated with [his] works." *Id.* ¶ 146.

### C. Plaintiff uploaded his 3D models to publicly available repositories and chose permissive licenses to govern his works—until Objaverse-XL was released.

Plaintiff Austin Beaulier is a 3D artist who posts and publicly distributes his 3D models on online platforms and repositories, including Sketchfab. Compl. ¶¶ 24–27. Plaintiff allegedly posted approximately four hundred 3D models on Sketchfab, selecting and using the permissive CC-BY Creative Commons license to govern his works. *Id.* ¶ 116. The CC-BY license allows the work to be reused and reproduced (including for commercial use) so long as the creator is attributed. *Id.* ¶¶ 41, 116.

At some point in 2023, Plaintiff allegedly applied a "NoAI" tag to the webpages for his 3D works on Sketchfab. Compl. ¶ 123. The "NoAI" tag is an HTML meta tag that is implemented through machine-readable metadata embedded in a Sketchfab webpage. *Id.* ¶¶ 55–56. The Complaint does ***not*** allege that the "NoAI" tag is metadata conveyed on, within, or in connection with the actual downloadable file for each 3D work.

At some time in 2023 after Objaverse-XL was released, Plaintiff purportedly learned that an unspecified number of his works were referenced within the Objaverse dataset. Compl. ¶ 124. "As a result of these developments," Plaintiff took affirmative actions to restrict access to his works, which allegedly reduced the visibility of his work and his portfolio's exposure. *Id.* ¶ 126. Plaintiff also voiced his objections publicly and with Sketchfab, but he was informed that Sketchfab could not do anything after Plaintiff's works were indexed and collected by third-party datasets. *Id.* ¶ 125. According to the Complaint, these events purportedly had a "personal impact" on Plaintiff, who allegedly experienced a loss of creative motivation "[u]pon learning that his works had been incorporated into datasets . . . against his explicit wishes." *Id.* ¶ 127.

ROBLOX'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:26-cv-02642-JSC

6213845

**D.    Two years later, Plaintiff sued Roblox for DMCA violations.**

In March 2026, Plaintiff filed this lawsuit against Roblox on behalf of a putative class, asserting two claims for violations of the DMCA.

Plaintiff's first claim alleges a violation of section 1202(b)(1), which prohibits intentional CMI removal or alteration where it is done so with knowledge or reasonable grounds to know the removal would induce, enable, facilitate, or conceal an infringement.  The Complaint does not allege that Roblox downloaded or used the assets that Objaverse-XL had already collected and compiled.  Instead, Plaintiff inexplicably claims—***solely upon information and belief***—that Roblox undertook a roundabout course with more steps by (1) looking at the assets' references or links in the Objaverse-XL dataset, (2) separately navigating to those individual web pages where the original 3D files were hosted (*e.g.*, Sketchfab), and only then (3) downloading the original 3D assets from those sites directly.  Compl. ¶¶ 87, 93–94.  Once Roblox purportedly obtained these 3D assets, the Complaint alleges that Roblox's "preprocessing pipelines" then "transform[ed] raw 3D asset files into numerical or visual representations that can be used as training inputs." *Id.* ¶¶ 95–97.  This process, Plaintiff claims, separated the works from their "attribution information, licensing terms, and other CMI that accompanied the works." *Id.* ¶ 100.  The Complaint also alleges that Roblox "knew or had reasonable grounds to know that the preprocessing pipelines used to train its generative AI systems would separate the creative content of the works from the CMI that accompanied those works." *Id.* ¶ 104.  Yet the Complaint is silent as to what CMI (if any) was actually attached to the works either (1) when Roblox purportedly downloaded the original 3D assets or (2) at the beginning of the "preprocessing pipeline."

Plaintiff's second DMCA claim asserts a violation of section 1202(b)(3), which prohibits the "distribution" of works while "knowing" that CMI was removed.  Once again, the Complaint does not allege that Roblox "distributed" any works (Plaintiff's or anyone else's) without CMI.  Instead, Plaintiff alleges that Roblox "***used*** these CMI-stripped representations of Plaintiff's works as inputs to train generative AI systems." Compl. ¶ 105 (emphasis added).  He also alleges that Roblox "knew, or had reasonable grounds to know, that the ***use*** of works . . . would induce, enable, facilitate, or conceal infringement of Plaintiff's" works. *Id.* ¶ 164 (emphasis added).  The

5

6213845

Complaint does not contain any allegations that Roblox transferred any copy of a 3D model (with or without CMI) to anyone else.

### III.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts showing that his "right to relief [rises] above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While the Court must accept material factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "[n]or does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[W]here the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory," the court should dismiss the complaint.  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  The court does not, however, "assume the truth of legal conclusions merely because they are cast in the form of factual allegations," and "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citations omitted).

Under Rule 12(b)(1), the Court must dismiss any action for which it lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  At the core of the Court's jurisdictional inquiry is Article III's "'irreducible constitutional minimum' of standing." *Spokeo v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  "In a putative class action, named plaintiffs 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Doe 1*, 2024 WL 235217, at *4.  "[W]hen the sole named plaintiff in a class action lawsuit has lacked standing since the outset of the litigation, substitution of another named plaintiff is not required, and dismissal is proper." *Rivera v. Invitation Homes, Inc.*, 2022 WL 504161, at *5 (N.D. Cal. Feb. 18, 2022) (citing *Lierboe v. State Farm Mut. Auto. Ins. Co.*,

6213845

350 F.3d 1018, 1022 (9th Cir. 2003)).

## IV.   ARGUMENT

### A.   Plaintiff Fails to State a Claim for Relief Under Rule 12(b)(6)

To state a claim under section 1202(b)(1), a plaintiff must plead: "(1) the existence of CMI on the infringed work, (2) removal or alteration of that information, [and] (3) that the removal or alteration was done intentionally," *O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282, 1286–87 (C.D. Cal. 2022), as well as the additional scienter requirement that the CMI be removed "knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any" copyright.  *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 673 (9th Cir. 2018); *see also* 17 U.S.C. § 1202(b)(1).

To state a claim under section 1202(b)(3), a plaintiff must allege "(1) the existence of CMI in connection with a copyrighted work; (2) that a defendant distributed works or copies of works (3) while knowing that CMI has been removed or altered without authority of the copyright owner or the law; (4) while knowing, or having reasonable grounds to know that such distribution will induce, enable, facilitate, or conceal an infringement."  *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020) (cleaned up); *see also* 17 U.S.C. § 1202(b)(3).

Regardless of whether the information identified qualifies as CMI here, both counts fail as the Complaint does not plausibly allege *any* (let alone *all*) of the following: (a) that Roblox engaged in any act that *removed* CMI; (b) that Roblox *intended to remove* any CMI when it converted those raw 3D assets into "machine-learning training inputs" to train its Cube 3D model, § 1202(b)(1); (c) that Roblox *knowingly distributed* any of Plaintiff's works with CMI removed, § 1202(b)(3); and (d) that Roblox had *reasonable grounds to know* that its alleged conduct would "induce, enable, facilitate, or conceal an infringement of any" copyright, § 1202(b).

#### 1.   Plaintiff fails to plausibly allege actionable removal of CMI.

##### a.   The Complaint fails to plausibly allege "removal" of CMI (Counts I and II).

Both of Plaintiff's DMCA claims require an affirmative act of CMI "removal."  Section 1202(b)(1) prohibits "intentionally ***remov[ing]*** or alter[ing] any [CMI]."  Contrary to Plaintiff's

7

6213845

allegations, section 1202(b)(1) does **not** proscribe the **failure to preserve** CMI, nor does it create liability for failing to include attribution information. *Contra, e.g.*, Compl. ¶¶ 101, 107, 111, 150 (faulting Roblox for alleged "fail[ure] to preserve" CMI).[6]  And section 1202(b)(3) prohibits distribution, importation, or public performance of works with knowledge that CMI "has been **removed** or altered" without authority.  Congress chose to prohibit "remov[al]" and "alter[ation]" in both sections—*i.e.*, specific affirmative acts of tampering with the integrity of CMI—not the mere absence of CMI from a new or converted format established through a uniform, technical process.

Courts have repeatedly rejected attempts to expand section 1202(b) to reach mere non-preservation of CMI.  *See, e.g.*, *Logan*, 2023 WL 3668520, at *6–7 (no DMCA liability where attribution information not preserved when thumbnails were created from images, inadvertently cropping out CMI); *Harrington v. Pinterest*, 2022 WL 4348460, at *4 (N.D. Cal. Sept. 19, 2022); *Dolls Kill, Inc. v. Zoetop Bus. Co.*, 2022 WL 16961477, at *3 (C.D. Cal. Aug. 25, 2022) ("The DMCA prohibits removing or altering CMI; it does not prohibit merely omitting CMI from an infringing work."); *A'Lor Int'l, Ltd. v. Tapper Fine Jewelry, Inc.*, 2012 WL 12921035, at *10 (C.D. Cal. Aug. 8, 2012) ("omissions" of CMI not actionable because "the plain language of the statute encompasses only removal and alteration").

Here, the Complaint describes format conversion, not CMI "removal."  Plaintiff alleges that 3D model files are "copied and processed" and "converted" into machine-learning inputs through operations such as "format conversion, mesh normalization, rendering, [and] voxelization."  Compl. ¶¶ 95, 98, 144–45.  And Plaintiff concedes that the resulting separation of CMI is an "inherent consequence" of this process: "[t]his separation between the creative content of a work and the CMI that accompanied it is a ***foreseeable and inherent consequence of using large-scale creative datasets*** to train generative artificial intelligence systems."  *Id.* ¶ 103 (emphasis added).  An "inherent consequence" is one that occurs automatically as a function of

---

[6] Plaintiff's repeated allegations that Roblox "removed and/or failed to preserve CMI" in the disjunctive is a tell that Plaintiff cannot allege the intentional conduct that the DMCA requires. *See e.g.*, Compl. ¶ 15; *see also id.* ¶ 1 ("The case arises from Defendant's removal or failure to preserve machine-readable copyright management information.").  Plaintiff cannot plausibly plead intentional removal while simultaneously alleging a mere failure to preserve CMI.

6213845

the process—not because a defendant took an affirmative, intentional step to strip metadata from a work. *See Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772, 779 (N.D. Cal. 2024) (dismissing 1202(b)(1) claim because plaintiffs alleged "no facts to support the assertion that '[b]y design, the training process does not preserve any CMI'"); *New York Times Co. v. Microsoft Corp.*, 777 F. Supp. 3d 283, 314 (S.D.N.Y. 2025) (holding that a "conclusory statement that defendants' process of training their LLMs removes CMI 'by design' fails to 'nudge[ ] [its] claims across the line from conceivable to plausible'") (internal citation omitted). One would not say that converting a 3D model into a distinct numerical format suitable for AI training "removes" its CMI, any more than one would say that transcribing a voicemail into written text "removes" the tone (*e.g.*, sarcasm), pauses, or background sounds previously present in the message—rather, the new format inherently does not carry forward that information.

The absence of any actual removal is further confirmed by the Complaint's failure to identify a single work from which CMI was affirmatively removed by Roblox. To plead CMI removal in the AI training context, a plaintiff must "identify the exact type of CMI included in their online works . . . that they have a good faith belief were scraped into the . . . datasets used to train [the AI model]." *Andersen v. Stability AI Ltd.*, 700 F. Supp. 3d 853, 872 (N.D. Cal. 2023); *see also Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1175 (N.D. Cal. 2019) (dismissing claim where plaintiff failed to "identify which photographs had CMI removed"). Plaintiff does none of this. He alleges only that he published "hundreds" of models (Compl. ¶¶ 115–16) and later found "numerous" works "referenced" in a dataset of over ten million assets. *Id.* ¶¶ 77, 124. He identifies no single work from which CMI was intentionally removed, nor any good faith basis for believing specific works were included in Roblox's training data. These are exactly the kind of "threadbare" allegations that *Andersen* rejected. 700 F. Supp. 3d at 872.

Plaintiff's allegations regarding the "NoAI" tag on Sketchfab, the primary example of purported CMI specifically identified in the Complaint, further underscore the absence of allegations of removal. The Complaint itself describes the "NoAI" tag as an "HTML meta tag within the model's webpage" that "functions as a machine-readable signal." Compl. ¶ 55. In other words, the alleged CMI exists on *webpages*, not as information on or near the 3D files that

9

6213845

Roblox allegedly accessed. *Cf. Asia Econ. Inst. v. Xcentric Ventures LLC*, 2011 WL 2469822, at *3 (C.D. Cal. May 4, 2011) (discussing meta tags that "are not visible in the title or body of a report"). Courts have consistently held that information located only on a webpage, rather than on or next to the work, does not qualify as CMI as defined by section 1202(c). *See SellPoolSuppliesOnline.com LLC v. Ugly Pools Arizona, Inc.*, 344 F. Supp. 3d 1075, 1083 (D. Ariz. 2018), *aff'd*, 804 F. App'x 668 (9th Cir. 2020); *Logan v. Meta Platforms, Inc.*, 636 F. Supp. 3d 1052, 1062 (N.D. Cal. 2022). Roblox cannot have "removed" CMI that was never attached to the works in the first place.

Finally, courts have repeatedly held that "no DMCA violation exists where the works"—*i.e.*, the original and the form from which CMI was allegedly removed—"are not identical." *Doe 1*, 2024 WL 235217, at *9; *see also Frost-Tsuji Architects v. Highway Inn, Inc.*, 2015 WL 263556, at *2 (D. Haw. Jan. 21, 2015), *aff'd*, 700 F. App'x 674 (9th Cir. 2017); *Andersen v. Stability AI Ltd.*, 744 F. Supp. 3d 956, 971 (N.D. Cal. 2024). Here, Plaintiff concedes that the accused training inputs are not identical copies of the original 3D assets when he alleges that Roblox converted those 3D assets into "numerical or visual representations"—*i.e.*, something fundamentally different, Compl. ¶¶ 87–88, 95, 97–98, which is fatal to his claim.

Because the Complaint alleges, at most, a process that converts works into new formats that cannot accommodate CMI—not an affirmative act directed at the integrity of CMI—it fails to allege "removal" within the meaning of § 1202(b)(1) or (3).

### b. The Complaint fails to plausibly allege Roblox "intended" to remove CMI (Count I).

Even assuming that a format conversion could constitute "removal," the Complaint still fails to allege that any such removal is "intentional." 17 U.S.C. § 1202(b)(1). Plaintiff's own allegations confirm that any loss of CMI occurred as an "unintended side effect" of converting 3D assets into a format suitable for training through a uniform technical process that operates identically regardless of whether CMI is present. Plaintiff alleges that CMI was lost during "preprocessing pipelines," Compl. ¶ 104, including during "format conversion, mesh normalization, rendering, voxelization, and other transformations," *id.* ¶ 98. Each of these steps,

ROBLOX'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:26-cv-02642-JSC

6213845

according to Plaintiff, is designed to "convert the geometry and textures of a 3D model into data structures suitable for machine-learning training."  *Id.*; *see also id.* ¶ 99 (alleging that these processes "preserv[e] … the creative content of the work … in numerical or visual form so that the model can learn patterns from the training data").  Such conduct cannot constitute intentional removal or alteration under section 1202(b)(1) as a matter of law.  *See, e.g.*, *Stevens v. Corelogic, Inc.*, 194 F. Supp. 3d 1046, 1052 (S.D. Cal. 2016) ("Plaintiffs present no evidence that Corelogic intentionally removed CMI, as opposed to removal being an unintended side effect of the fact that the software platform was based on a library that failed to retain metadata by default."), *aff'd*, 899 F.3d 666 (9th Cir. 2018); *Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999) ("Plaintiff has not offered any evidence showing [d]efendant's actions were intentional, rather than merely an unintended side effect of the [technology's] operation."), *aff'd in part, rev'd in part on other grounds*, 336 F.3d 811 (9th Cir. 2003).  In other words, as the Complaint acknowledges, the accused process treats CMI and non-CMI content identically—simply converting everything into numerical representations—and does not intentionally target CMI.

Another court in this District has already held that such uniform processes cannot support a plausible inference of intentional CMI removal.  In *Logan v. Meta Platforms, Inc.,* the court found that Meta's uniform process for cropping photographs into thumbnails—which incidentally eliminated the plaintiff's signature—did not give rise to intentional CMI removal because "every photo, when turned into a thumbnail on Facebook, is cropped to a small, uniform size" and "the fact that all Facebook thumbnails are similarly cropped belies th[e] assumption" of intentionality.  2023 WL 3668520, at *6–7.  The same logic governs here: Roblox's preprocessing pipeline allegedly converts *all* 3D assets into numerical training inputs, and any loss of CMI is an incidental byproduct of that uniform process, not a targeted act of removal.

Because any alleged loss of CMI was an "unintended side effect" of a technical function "inherent" to converting 3D assets into a format suitable for training AI, Plaintiff does not, and cannot, allege that Roblox intentionally removed any CMI.

### 2. Plaintiff Fails to Allege Distribution of His Works Under Section 1202(b)(3) (Count II).

Finally, Plaintiff's section 1202(b)(3) claim also fails to allege the key element of "distribution" of his works. Section 1202(b)(3) states that no person shall "distribute, import for distribution, or publicly perform works [or] copies of works … knowing that [CMI] has been removed or altered without authority of the copyright owner or the law." 17 U.S.C. § 1202(b)(3). "Under the plain language of the statute, liability requires *distributing* the original 'works' or 'copies of [the] works.'" *Tremblay*, 716 F. Supp. 3d at 780 (emphasis added).

Plaintiff alleges no distribution of his works by Roblox. Indeed, to the extent the Complaint discusses any purported "distribution" at all, Plaintiff points the finger squarely at the conduct of third-party dataset creators for whom Roblox cannot be held responsible. *See, e.g.*, Compl. ¶¶ 64 (Sketchfab, Thingiverse, Polycam), ¶ 78 (Objaverse). Plaintiff's allegations as to Roblox, by contrast, center entirely on the alleged "*use* of works from which CMI had been removed," Compl. ¶ 64 (emphasis added)—a framing that pervades the Complaint. *See, e.g.*, *id.* at p. 14 ("F. Defendant's Use of Plaintiff's Works for AI Training…"); ¶¶ 96–99 (alleging use of 3D assets by "transforming [them] into numerical or visual representations that can be used as training inputs"); ¶ 112 ("Roblox used works identified through Objaverse to train a commercial generative system."); at p. 25 ("17 U.S.C. § 1202(b)(3) (Distribution *or Use* of Works Knowing CMI Has Been Removed)"); ¶¶ 160–161 (alleging Roblox used 3D assets from Objaverse-XL in AI training pipelines); ¶ 162 (asserting that Roblox thus "used, distributed, and incorporated these CMI-stripped representations of Plaintiff's works within the training datasets").

The Complaint, in other words, seeks to hold Roblox liable on the premise that pure internal "use" of copyrighted works is sufficient under section 1202(b)(3). But that is incorrect. Indeed, the word "use" does not even appear in the statutory language, and Roblox is aware of no case in which section 1202(b)(3) liability was predicated on mere internal "use" of a copyrighted work.

Once stripped of its improper allegations based on "use," the Complaint is devoid of any well-pleaded allegations that Roblox distributed copies of Plaintiff's works from which CMI had

been removed, nor could there be given the lack of any allegation that Roblox's training data is publicly disseminated. Plaintiff's theory would collapse use into "distribution" under section 1202(b)(3). It would let any copyright plaintiff seek DMCA statutory damages for internal use of an unregistered work, bypassing the Copyright Act's registration and damages limitations. *See* 17 U.S.C. § 1203(c)(3)(B) (providing statutory damages of "not less than $2,500" per violation). That untenable result would effectively nullify the Copyright Act's registration requirement in section 411(a) and its limitation on statutory damages for unregistered works in section 412— precisely the end-run Plaintiff attempts here by recasting what is, at bottom, a copyright grievance as a DMCA claim. Courts have rightly rejected this gambit. *See Frost-Tsuji Architects*, 2015 WL 263556, at *3–4 (refusing to extend § 1202(b) to reach derivative works, because doing so would collapse any distinction between copyright infringement and DMCA claims); *Robert L. Stark Enters., Inc. v. Neptune Design Grp., LLC*, 2017 WL 1345195, at *11 (N.D. Ohio Apr. 12, 2017) (rejecting § 1202(b)(3) claim premised on creating derivative works without CMI because the statute requires distribution of "copies"). Nothing in the DMCA, or judicial decisions interpreting its scope, suggests that Congress intended such an absurd result.

Accordingly, Plaintiff does not, and cannot, allege that Roblox distributed any works with Plaintiff's CMI removed.

### 3. Plaintiff fails to allege any predicate infringement that Roblox's alleged CMI removal would induce, enable, facilitate, or conceal (Counts I and II).

The Complaint also fails to satisfy section 1202(b)'s double scienter requirement. Beyond pleading intentional removal, a plaintiff must also allege that the defendant knew or had "reasonable grounds to know" that its conduct would "induce, enable, facilitate, or conceal an infringement," a required element of both section 1202(b)(1) claims and section 1202(b)(3) claims. But the deficiency in the Complaint is even more fundamental: Plaintiff fails to identify *any* infringement that Roblox's alleged CMI removal would facilitate.

Section 1202(b) requires knowledge or "reasonable grounds to know" that the CMI removal would "induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b). In the Ninth Circuit, "a plaintiff bringing a [s]ection 1202(b) claim must make an affirmative

showing," such as a past "pattern of conduct" or "modus operandi," that the defendant knew or had reasonable grounds to know its removal of CMI would likely cause or conceal future infringement. *Stevens*, 899 F.3d at 674–75. In particular, plaintiffs must allege a "more specific application than the universal possibility of encouraging infringement; specific allegations as to how identifiable infringements 'will' be affected are necessary." *Id.* at 674. And although plaintiffs need not show that a specific infringement has already occurred, they must allege that "future infringement is likely, albeit not certain, to occur as a result of the removal or alteration of CMI*." Id.* at 675. This irreducible nexus to at least *some* predicate infringement reflects a key limitation that Congress and the WIPO Copyright Treaty delegates specifically and deliberately added to the statutory language. *Id.* at 674–75 ("In response to requests from delegates that the provision be modified to require a connection to an infringing purpose, the provision was redrafted . . . [to] make[] clear that the 'induce, enable, facilitate or conceal' requirement is intended to limit liability in some fashion.").

Here, the Complaint identifies no theory of infringement whatsoever that could serve as a predicate for section 1202(b) liability. Plaintiff does not allege that Roblox's Cube 3D model produces any infringing output or facilitates any downstream third-party infringement. To the contrary, the Complaint repeatedly alleges that these models produce "*new* 3D content," "*new* 3D objects," and "*new* 3D assets"; however, there is no allegation that Cube 3D *ever* produced an infringing output (*i.e.*, a copy of Plaintiff's works). Compl. ¶¶ 75, 82–83, 105–06 (emphasis added). Nor does the Complaint allege that Cube 3D was trained on potentially infringing copies of 3D assets. To the contrary, the Complaint alleges the exact opposite: the pre-training conversion "process involves **transforming** raw 3D asset files into numerical or visual representations that can be used as training inputs." *Id.* ¶ 97 (emphasis added). The only allegation even referencing Roblox's knowledge relates to Roblox's awareness of its own "preprocessing pipeline" operations, not awareness of any infringement. *Id.* ¶ 104. Moreover, because Roblox's training data is not publicly accessible, Plaintiff cannot show "how omitting CMI in the copies used in the training set gave [Roblox] reasonable grounds to know that [the CMI removal] would induce, enable, facilitate, or conceal infringement." *Tremblay*, 716 F. Supp.

3d at 779; *see also Raw Story Media, Inc. v. OpenAI, Inc.*, 756 F. Supp. 3d 1, 6 (S.D.N.Y. 2024) (expressing doubt that "the mere removal of identifying information from a copyrighted work—*absent dissemination*—has any historical or common-law analogue") (emphasis added).

Plaintiff's failure to identify (much less, plausibly allege) any predicate infringement is a non-starter, and courts in this District (and the Ninth Circuit generally) have routinely dismissed DMCA claims with similar deficiencies at the pleading stage.  *See, e.g.*, *Harrington v. Pinterest, Inc.*, 2021 WL 4033031, at *6 (N.D. Cal. Sept. 3, 2021) (dismissing § 1202(b) claim where plaintiff did "not allege any facts to show that [defendant's conduct] induced, enabled, facilitated or concealed *any particular act of infringement by anyone*, let alone a pattern of such infringement likely to recur in the future") (emphasis added); *O'Neal*, 583 F. Supp. 3d at 1288 (dismissing § 1202(b)(1) claim because plaintiff "ha[d] not alleged anything with respect to [defendant]'s knowledge that removal or alteration of [plaintiff's] CMI would likely result in future infringement").

In short, far from pleading sufficient facts regarding Roblox's alleged mental state as to likely future infringement as required by the DMCA, the Complaint fails to identify ***any*** instance of potential infringement by ***anyone***.  This deficiency alone merits the dismissal of both § 1202(b)(1) and § 1202(b)(3) claims.

### B.     Plaintiff Lacks Standing Under Rule 12(b)(1)

The Complaint's ill fit with the DMCA is further reflected by its failure to plead Article III standing.  The Complaint improperly seeks redress from Roblox for claimed injuries that are not traceable to Roblox's conduct and which are too speculative, abstract, and generalized to amount to concrete harm for purposes of Article III standing.  Just as Plaintiff attempts to manufacture a DMCA violation, his allegations of injury attempt to manufacture standing against Roblox where none exists, highlighting the untenable nature of his DMCA claims and why they should be dismissed without leave to amend.

Plaintiff bears the burden of demonstrating standing for each claim and form of relief sought.  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021).  To do so, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent;

15

6213845

(ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* at 423.

**Lack of Traceability.** A plain and direct reading of the Complaint reveals that Plaintiff's core frustration is about his works being collected into a publicly accessible database, contrary to his wishes. But these alleged injuries are not "fairly traceable" to Roblox nor to the alleged absence of CMI from Plaintiff's works. The Complaint's own narrative reveals that Plaintiff's harms—restricting access to his works, reducing his portfolio's visibility, and experiencing diminished creative motivation—all flow from his discovery that his works were "referenced within the Objaverse dataset" and Sketchfab's inability to prevent third-party indexing. Compl. ¶¶ 123–27. These events occurred in 2023, *over two years* before Roblox announced Cube 3D in March 2025. *Id.* ¶¶ 12, 108. Plaintiff cannot seek redress from Roblox for self-inflicted injuries predating the alleged misconduct and attributable to third parties not before this Court. *See Lujan*, 504 U.S. at 560 ("The injury has to be fairly traceable to the challenged action of the defendant, and not the result of the *independent action of some third party* not before the court.") (cleaned up, emphasis added); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm").

**Lack of Concrete and Particularized Injury.** "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 578 U.S. at 341. Plaintiff does not allege that Roblox ever publicly disseminated copies of his works without CMI, nor does he suggest that Cube 3D produced or is capable of producing an infringing output that could lead to a concrete injury. Instead, Plaintiff's "perfunctory allegation of emotional distress" (Compl. ¶¶ 126–27) is "insufficient to plausibly allege constitutional standing." *Manzanarez v. Madera Collection Servs.*, 722 F. Supp. 3d 1074, 1081 (E.D. Cal. 2024) (citing cases). And to the extent that Plaintiff fears that his future works would also be "incorporated into datasets . . . against his explicit wishes" (Compl. ¶ 127), "such a fear is insufficient to create standing." *Clapper*, 568 U.S. at 417–18 ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.") (cleaned up).

Plaintiff's systemic-harm allegations are generalized grievances, not particularized injuries. An injury-in-fact "must affect the plaintiff in a personal and individual way." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). The Complaint alleges that Roblox "disrupted the market for licensing 3D assets" or "undermined the licensing framework" (Compl. ¶¶ 128–29), but Plaintiff does not allege a single lost sale, licensing opportunity, or customer attributable to Roblox's conduct. Absent such particularized harm, these alleged injuries to "the system" cannot confer standing in the abstract. *See Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837, 850–51 (N.D. Cal. 2023) (dismissing damages claims in analogous DMCA AI case for lack of standing where plaintiffs failed to "allege any additional, concrete harm").

In sum, Plaintiff's injuries are speculative, self-inflicted, temporally disconnected from Roblox's conduct, and insufficiently particularized. The Complaint should be dismissed for lack of standing.

## V.    CONCLUSION

For the foregoing reasons, Roblox respectfully requests that the Court dismiss Plaintiff's complaint with prejudice.

Dated:  June 18, 2026                                                KEKER, VAN NEST & PETERS LLP

By:    */s/ Edward A. Bayley*
MICHELLE YBARRA
EDWARD A. BAYLEY
DEEVA SHAH
SPENCER MCMANUS
KEVIN SONG
LIAM BROWN

Attorneys for Defendant ROBLOX CORPORATION

6213845