William J. Edelman (SBN 285177)
**MILBERG, PLLC**
280 S. Beverly Drive-Penthouse
Beverly Hills, CA 90212
Phone: 866.252.0878
wedelman@milberg.com

*Attorney for Plaintiff and Proposed Class*
*(Additional Counsel on Signature Page)*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| AUSTIN BEAULIER, individually and on behalf of all those similarly situated,<br><br>  Plaintiff,<br><br> v.<br><br>ROBLOX CORPORATION,<br><br>  Defendant. | Civil Action No. 5:26-cv-02642-BLF<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Judge: Hon. Beth Labson Freeman<br><br>Date Filed: March 26, 2026<br><br>Trial Date: Not Set |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. ii

TABLE OF AUTHORITIES ........................................................................................................ iii

INTRODUCTION ........................................................................................................................... 1

FACTUAL BACKGROUND .......................................................................................................... 2

LEGAL STANDARD ...................................................................................................................... 4

ARGUMENT ................................................................................................................................... 5

    A.    Plaintiff States Claims Under § 1202(b) Based on Roblox's Removal of CMI. ........................... 5

        1.    The Complaint Plausibly Alleges Removal. ....................................................................... 5

        2.    The Complaint Plausibly Alleges That Roblox Intentionally Removed CMI. ........................... 12

    B.    Plaintiff Alleges Distribution Sufficient to Sustain a § 1202(b)(3) Claim. ................................. 15

    C.    Plaintiff Plausibly Alleges That Roblox Knew or Had Reasonable Grounds to Know That Removing CMI Would Induce, Enable, Facilitate, or Conceal Infringement. ...................................... 16

    D.    Plaintiff Has Adequately Alleged Standing ................................................................................ 20

    E.    Any Dismissal Should Be With Leave to Amend. ...................................................................... 25

CONCLUSION .............................................................................................................................. 25

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**CASE NO. 5:26-CV-02642-BLF**

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*ADR Int'l Ltd. v. Inst. for Supply Mgmt., Inc.*,
    667 F. Supp. 3d 411 (S.D. Tex. 2023)................................................................. 17

*A'Lor Int'l, Ltd. v. Tapper Fine Jewelry, Inc.*,
    2012 WL 12921035 (C.D. Cal. Aug. 8, 2012) ..................................................... 8

*Andersen v. Stability AI Ltd.*,
    700 F. Supp. 3d 853 (N.D. Cal. 2023)............................................................ 11, 12

*Andersen v. Stability AI Ltd.*,
    744 F. Supp. 3d 956 (N.D. Cal. 2024)................................................................ 18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................ 4

*Asia Economic Institute v. Xcentric Ventures LLC*,
    2011 WL 2469822 (C.D. Cal. May 4, 2011)........................................................ 15

*Batra v. PopSugar, Inc.*,
    2019 WL 482492 (N.D. Cal. Feb. 7, 2019).......................................................... 29

*Beijing Meishe Network Tech. Co. v. TikTok Inc.*,
    2024 WL 3522196 (N.D. Cal. July 23, 2024)....................................................... 16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................... 4, 5

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) .......................................................................................... 34

*Concord Music Grp., Inc. v. Anthropic PBC*,
    2025 WL 4808984 (N.D. Cal. Oct. 6, 2025) ............................................. 21, 22, 28, 29

*Dep't of Com. v. New York*,
    588 U.S. 752 (2019) ....................................................................................... 31, 32

*Doe 1 v. GitHub, Inc.*,
    672 F. Supp. 3d 837 (N.D. Cal. 2023)........................................................... passim

iii

*Doe 1 v. GitHub, Inc.*,
   2024 WL 235217 (N.D. Cal. Jan. 22, 2024)........................................................................ 18

*Doe 1 v. GitHub, Inc.*,
   2024 WL 4336532 (N.D. Cal. Sept. 27, 2024)..................................................................... 18

*Dolls Kill, Inc. v. Zoetop Bus. Co.*,
   2022 WL 16961477 (C.D. Cal. Aug. 25, 2022) ..................................................................... 7

*EVOX Prods., LLC v. Leland Stanford Junior Univ.*,
   No. 24-CV-09521-NW, 2025 WL 4690432 (N.D. Cal. July 23, 2025) ......................... 31, 32

*Food & Drug Admin. v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024) ........................................................................................................... 30

*Free Speech Sys., LLC v. Menzel*,
   390 F. Supp. 3d 1162 (N.D. Cal. 2019)............................................................................... 11

*Friedman v. Live Nation Merch., Inc.*,
   833 F.3d 1180 (9th Cir. 2016) ............................................................................................ 12

*Frost-Tsuji Architects v. Highway Inn, Inc.*,
   2015 WL 263556 (D. Haw. Jan. 21, 2015)..................................................................... 19, 25

*GC2 Inc. v. Int'l Game Tech. PLC*,
   255 F. Supp. 3d 812 (N.D. Ill. 2017).................................................................................. 13

*Harrington v. Pinterest, Inc.*,
   2021 WL 4033031 (N.D. Cal. Sept. 3, 2021)...................................................................... 29

*Harrington v. Pinterest, Inc.*,
   2022 WL 4348460 (N.D. Cal. Sept. 19, 2022)....................................................................... 8

*ICONICS, Inc. v. Massaro*,
   192 F. Supp. 3d 254 (D. Mass. 2016).................................................................................. 17

*In re OpenAI, Inc. Copyright Infringement Litig.*,
   2025 WL 3635559 (S.D.N.Y. Dec. 15, 2025) ...................................................................... 25

*Izmo, Inc. v. Roadster, Inc.*,
   2019 WL 13210561 (N.D. Cal. Mar. 26, 2019) .................................................................. 26

*Kadrey v. Meta Platforms, Inc.*,
   2025 WL 744032 (N.D. Cal. Mar. 7, 2025) ................................................... 20, 29, 31, 32

iv

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**CASE NO. 5:26-CV-02642-BLF**

*Kadrey v. Meta Platforms, Inc.*,
   2025 WL 1786418 (N.D. Cal. June 27, 2025) ............................................................... 21

*Kelly v. Arriba Soft Corp.*,
   77 F. Supp. 2d 1116 (C.D. Cal. 1999) ................................................................... 23, 24

*Leadsinger, Inc. v. BMG Music Publ'g*,
   512 F.3d 522 (9th Cir. 2008) .................................................................................... 35

*Logan v. Meta Platforms, Inc.*,
   636 F. Supp. 3d 1052 (N.D. Cal. 2022) ................................................................. 12, 14

*Logan*,
   2023 WL 3668520 ................................................................................................ 22, 23

*Lopez v. Apple, Inc.*,
   558 F. Supp. 3d 821 (N.D. Cal. 2021) ....................................................................... 10

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000) .................................................................................... 35

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................. 30, 31

*Mango v. BuzzFeed, Inc.*,
   970 F.3d 167 (2d Cir. 2020) ................................................................................. 24, 27

*Manzanarez v. Madera Collection Servs.*,
   722 F. Supp. 3d 1074 (E.D. Cal. 2024) ...................................................................... 33

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008) ..................................................................................... 5

*Murphy v. Millennium Radio Grp. LLC*,
   650 F.3d 295 (3d Cir. 2011) ....................................................................................... 13

*N.Y. Times Co. v. Microsoft Corp.*,
   777 F. Supp. 3d 283 (S.D.N.Y. 2025) ................................................................... passim

*New Parent World, LLC v. True To Life Prods., Inc.*,
   2024 WL 4277865 (D. Ariz. Sept. 24, 2024) .............................................................. 17

*O'Neal v. Sideshow, Inc.*,
   583 F. Supp. 3d 1282 (C.D. Cal. 2022) ...................................................................... 29

v

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**CASE NO. 5:26-CV-02642-BLF**

*Oracle USA, Inc. v. Rimini St., Inc.*,
  879 F.3d 948 (9th Cir. 2018) ............................................................................................................ 27

*Pac. Studios Inc. v. W. Coast Backing Inc.*,
  2012 WL 12887637 (C.D. Cal. Apr. 18, 2012) ............................................................................. 13, 26

*Powers v. Caroline's Treasures Inc.*,
  382 F. Supp. 3d 898 (D. Ariz. 2019) ........................................................................................... 12, 15

*Raw Story Media, Inc. v. OpenAI, Inc.*,
  756 F. Supp. 3d 1 (S.D.N.Y. 2024) .............................................................................................. 29, 32

*Robbins v. Oakley, Inc.*,
  2018 WL 5861416 (C.D. Cal. Sept. 27, 2018) ................................................................................... 26

*Robert L. Stark Enters., Inc. v. Neptune Design Grp., LLC*,
  2017 WL 1345195 (N.D. Ohio Apr. 12, 2017) ................................................................................... 25

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) ............................................................................................................ 30

*Schneider v. YouTube, LLC*,
  2022 WL 3031212 (N.D. Cal. Aug. 1, 2022) ................................................................................ 26, 29

*SellPoolSuppliesOnline.com LLC v. Ugly Pools Arizona, Inc.*,
  344 F. Supp. 3d 1075 (D. Ariz. 2018) ............................................................................................... 14

*Splunk Inc. v. Cribl, Inc.*,
  662 F. Supp. 3d 1029 (N.D. Cal. 2023) ............................................................................................. 17

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ........................................................................................................................... 30

*Stevens v. Corelogic, Inc.*,
  194 F. Supp. 3d 1046 (S.D. Cal. 2016) .............................................................................................. 24

*Stevens v. CoreLogic, Inc.*,
  899 F.3d 666 (9th Cir. 2018) ......................................................................................................... 26, 27

*The Intercept Media, Inc. v. OpenAI, Inc.*,
  767 F. Supp. 3d 18 (S.D.N.Y. 2025) ...................................................................................... 21, 31, 32

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ...................................................................................................................... 30, 31

vi

*Tremblay v. OpenAI, Inc.*,
   716 F. Supp. 3d 772 (N.D. Cal. 2024) ................................................................................... 9, 29

**Statutes**

17 U.S.C. § 411(a) ...................................................................................................................... 26

17 U.S.C. § 1201 or 1202 .......................................................................................................... 26

17 U.S.C. § 1202 ........................................................................................................... 17, 26, 31

17 U.S.C. §§ 1202(a) and (b) ..................................................................................................... 17

17 U.S.C. § 1202(b) .............................................................................................................. passim

17 U.S.C. § 1202(b)(1) .......................................................................................................... passim

17 U.S.C. § 1202(b)(3) .................................................................................................... 16, 24, 25

17 U.S.C. § 1202(c) ......................................................................................................... 13, 15, 16

17 U.S.C. § 1202(c)(6) ................................................................................................................ 27

17 U.S.C. § 1202(c)(7) .................................................................................................................. 7

**Rules**

Fed. R. Civ. P. 8(d)(2) ................................................................................................................... 5

Fed. R. Civ. P. 15(a)(2) ............................................................................................................... 35

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**CASE NO. 5:26-CV-02642-BLF**

### <u>INTRODUCTION</u>

Roblox's motion attacks a narrower and materially different complaint than the one Plaintiff actually filed. Plaintiff alleges that Roblox obtained 3D works from repositories where they were distributed with creator-identifying information, source links, license terms, attribution requirements, NoAI restrictions, and other CMI, and then processed those works into AI-training inputs that retained their expressive 3D content while stripping or severing the accompanying CMI. Roblox then used those CMI-stripped works or copies to train and commercialize Cube 3D. At the pleading stage, those allegations state claims under both § 1202(b)(1) and § 1202(b)(3).

Roblox's recast of § 1202 as a narrow "anti-piracy" statute that does not reach "permissive licensing regimes" cannot override the text. Congress prohibited the intentional removal of CMI and the distribution of works or copies knowing that CMI has been removed. Those prohibitions apply where, as here, a commercial actor obtains creator-identified works, severs the rights-management information that governs their use, and then exploits the resulting CMI-stripped copies in a commercial AI system.

*First*, the Complaint alleges removal. It repeatedly describes Roblox's conduct as removing, stripping, separating, severing, and disregarding CMI, and it explains how that occurred. Roblox cannot erase those well-pled allegations by isolating Plaintiff's alternative references to a failure to preserve. Nor can it avoid intent by labeling the process automated or uniform. The alleged removal resulted from the pipeline Roblox deliberately selected and used to process CMI-bearing works into CMI-stripped training inputs. Roblox's remaining arguments—that Plaintiff must identify every affected work, that CMI must be embedded in the file itself, and that the resulting training representations must be identical to the originals—impose requirements not found in the statute, and are refuted by the Complaint's allegations.

*Second*, Roblox argues that Plaintiff fails to state a § 1202(b)(3) claim because he has not plausibly alleged that Roblox distributed works or copies knowing CMI had been removed. But the Complaint expressly alleges that Roblox incorporated CMI-stripped copies of Plaintiff's works into the training datasets and systems behind Cube 3D and distributed those copies through its revenue-generating platform and Mesh Generation API. Roblox's effort to recast that conduct as merely internal "use," or to shift distribution to third-party dataset creators, ignores the allegations directed at Roblox. Roblox's summary-

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**CASE NO. 5:26-CV-02642-BLF**

judgment cases do not support dismissal where, as here, the Complaint alleges that Roblox obtained and copied the works, stripped their CMI, and distributed the resulting copies through its AI platform.

*Third*, Roblox misapplies the double-scienter requirement by demanding an already-completed infringement by a downstream user or an infringing output. Plaintiff's theory does not depend on either. The Complaint alleges that removing CMI enabled and concealed Roblox's own unauthorized copying and commercial use of works. It also explains the connection between removal and infringement: without the CMI: Roblox and others could not identify the creators, determine the governing terms, provide required attribution, filter restricted works, or ensure that use of the works in AI-training was within the scope of the applicable licenses. Those allegations identify a concrete infringement theory and the specific mechanism by which removal of CMI facilitated or concealed it.

*Fourth*, Plaintiff adequately alleges standing. Roblox reaches the opposite conclusion only by treating Plaintiff's response to Objaverse's publication as the sole injury alleged. But this ignores the injuries that flow directly from Roblox's own acquisition, processing, use, and commercialization of Plaintiff's works. Plaintiff's allegations that Roblox stripped CMI from his works, thereby impairing his ability to control, license, monetize, obtain credit for, and police those works are also concrete, property-based injuries closely tied to traditional copyright harms. These allegations confer standing.

For these reasons, more fully explained below, the Court should DENY Roblox's motion.

**FACTUAL BACKGROUND**

The Complaint alleges that Plaintiff and Class Members are 3D model artists and creators who publish and distribute original 3D works on public platforms such as Sketchfab, Thingiverse, Polycam, CGTrader, and other digital asset repositories. ECF No. 1, Complaint ("Compl.") ¶¶ 24–30, 33–45, 64–68, 113–16. Those works were published with copyright management information ("CMI"), including creator identity, work title, creator-account or portfolio links, attribution requirements, Creative Commons license terms, source-platform information, and other terms and conditions governing use. *Id.* ¶¶ 38–45, 64–68, 86, 92–93. For certain works hosted on Sketchfab, the Complaint also alleges that creators, including Plaintiff, applied a machine-readable "NoAI" tag to indicate that the works could not be used for AI training. *Id.* ¶¶ 52–63, 123–30. The NoAI designation was additional CMI because Plaintiff's works

2

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO. 5:26-CV-02642-BLF**

were already distributed with creator-identifying information, titles, source information, Creative Commons license designations, and attribution requirements before that designation was added. *Id.* ¶¶ 64–68, 92–93, 116, 123.

The Complaint further alleges that researchers and technology companies compiled references to such 3D works into large datasets that function as maps or indexes for downstream users to locate and obtain for themselves the underlying works from their original source platforms. *Id.* ¶¶ 75–88, 90–95. Objaverse-XL, for example, allegedly aggregates more than ten million 3D assets from public repositories while preserving references to original source files, source repositories, creator accounts, license information, and related metadata. *Id.* ¶¶ 2, 8, 76–81, 85–88, 93. Plaintiff's works are alleged to be included in Objaverse-XL and related derivative datasets used by Roblox to train its AI systems. *Id.* ¶¶ 29, 108–11, 124. According to the Complaint, Roblox used Objaverse-derived datasets as a source map to identify and obtain copies of Plaintiff's and Class Members' works from the repositories where those works were originally distributed with CMI. *Id.* ¶¶ 87, 90–95, 108–11.

Roblox's contrary framing does not match the Complaint. Roblox lumps together licensed datasets, publicly available datasets, and Creator Store assets affirmatively opted into AI training, but Plaintiff's Complaint makes clear that he is challenging Roblox's use of Objaverse-derived works subject to varying per-work license and attribution requirements. Mot. at 3; Compl. ¶¶ 38–46, 79–80, 108–12. Nor is the Complaint "silent" about what CMI accompanied those works: it identifies creator identity, titles, creator-account links, license designations, attribution requirements, source information, and other conditions governing use, and alleges Roblox obtained the works from repositories with CMI attached. Id. ¶¶ 64–68, 80, 86–87, 92–93, 100–01, 110–11. Roblox's "roundabout course" objection raises a factual dispute because the Complaint alleges Objaverse-XL functioned as a structured source map preserving references needed to locate the underlying works. Mot. at 5; Compl. ¶¶ 80–87, 93–95, 110–11.

After obtaining the works from repositories, Roblox allegedly copied, converted, rendered, normalized, voxelized, and otherwise processed them through machine-learning pipelines designed to transform raw 3D assets into AI-training inputs. *Id.* ¶¶ 95–104, 111, 144–46. The Complaint alleges that this process retained the expressive content of the works—including their geometry, structure, textures,

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO. 5:26-CV-02642-BLF**

and visual features—while removing, failing to preserve, or severing the creator-identifying information, licensing metadata, attribution requirements, NoAI restrictions, and other CMI that accompanied the works when originally distributed. *Id.* ¶¶ 98–107, 111, 145–51. Roblox allegedly knew or had reasonable grounds to know that its preprocessing pipelines would separate the works' creative content from that CMI. *Id.* ¶¶ 103–04, 149–51.

Roblox then allegedly used those CMI-stripped works to train Cube 3D, its generative AI system for producing 3D objects and digital assets. *Id.* ¶¶ 12–15, 105–12. Roblox publicly disclosed that Cube 3D was trained on approximately 1.5 million 3D assets, including assets derived from Objaverse. *Id.* ¶¶ 13, 108. The Complaint further alleges that Roblox disclosed no attribution mechanism for the underlying creators and no filtering system for noncommercial license restrictions before using those works for training. *Id.* ¶ 110. Roblox integrated Cube 3D into its revenue-generating Creator ecosystem through a Mesh Generation API, enabling users to automatically generate 3D assets within Roblox's online platform. *Id.* ¶¶ 14, 109, 112. Thus, the Complaint alleges that Roblox used works identified through Objaverse to train and deploy a commercial generative system without carrying forward the attribution, license terms, and other CMI that governed those works when originally published. *Id.* ¶¶ 15, 110–12.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint need only plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A plaintiff is not required to plead "detailed factual allegations," nor does Rule 8 demand "heightened fact pleading of specifics." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Instead, the Court must accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Dismissal is improper where the allegations raise the plaintiff's right to relief above the speculative level. *Twombly*, 550 U.S. at 555.

4

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**CASE NO. 5:26-CV-02642-BLF**

**ARGUMENT**

**A.    Plaintiff States Claims Under § 1202(b) Based on Roblox's Removal of CMI.**

**1.    The Complaint Plausibly Alleges Removal.**

Roblox first argues that Plaintiff alleges only "non-preservation" of CMI, but not removal. Mot. at 7–10. That argument raises several different points, each addressed in turn below.

The Complaint alleges far more than a passive omission. Plaintiff alleges that Roblox obtained the original 3D works from repositories where CMI accompanied them, and then processed those same works into training representations that retained the expressive 3D content while severing the accompanying CMI. Compl. ¶¶ 5, 8, 64–68, 80–88, 92–107, 108–112, 141–151, 160–164. Plaintiff repeatedly alleges what the statute requires: actual removal, alteration, stripping, separation, and severing of CMI. *Id.* ¶¶ 5, 15, 62–63, 87–88, 100–107, 111, 143–151, 160–164. Roblox cannot erase those allegations by pointing to places where Plaintiff also alleges that Roblox "failed to preserve" the same information. Rule 8 expressly allows Plaintiff to "set out 2 or more statements of a claim . . . alternatively or hypothetically," and the pleading "is sufficient if any one of them would be adequate." Fed. R. Civ. P. 8(d)(2).

Similar AI training cases have found allegations of removal in exactly this type of scenario. For example, in *Doe 1 v. GitHub, Inc.*, 672 F. Supp. 3d 837, 855-56 (N.D. Cal. 2023), the court rejected the very argument Roblox makes here. The defendants in *Doe 1*, developers of the Copilot code-generation tool, argued that their conduct amounted to "the passive non-inclusion of CMI" by neutral technology, not the "active removal of CMI" the statute requires. *Id.* at 857. The court rejected the framing, holding that "[t]his semantic distinction is not meaningful," because the plaintiffs had alleged the defendants trained their systems to ignore or remove the CMI that appeared in the licensed code. *Id.* at 857-58. On those allegations, the court accepted plaintiffs had adequately alleged removal. *Id.* at 858.

Here, Plaintiff alleges that repositories such as Sketchfab, Thingiverse, Polycam, GitHub, and others distributed creator-uploaded models together with CMI, including creator identity, licensing terms, attribution requirements, and other information governing permitted use. Compl. ¶¶ 64–68, 86, 92–93, 141–142. Objaverse-XL then preserved references to original source files, source repositories, and creator

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**CASE NO. 5:26-CV-02642-BLF**

accounts, making it possible to trace assets back to the platform and creator from which they originated. *Id.* ¶¶ 8, 80–81, 85–87, 93. Indeed, Roblox used Objaverse-derived references to identify and obtain copies of those 3D models from those source repositories. *Id.* ¶¶ 90–95, 108–111, 143. Roblox then copied, converted, rendered, normalized, and otherwise processed those works into machine-learning inputs suitable for Cube 3D, and in that process removed, failed to preserve, or disregarded the CMI that accompanied the works when originally distributed. *Id.* ¶¶ 95–107, 111, 144–151. These allegations are sufficient to state removal under § 1202(b).

The source references themselves are also CMI. Section 1202(c)(7) defines CMI to include "identifying numbers or symbols referring to such information or links to such information." 17 U.S.C. § 1202(c)(7). The Complaint alleges that Objaverse-XL preserved references to the original source files, source repositories, and creator accounts—links allowing users of the dataset to trace each work back to its creator and governing license—while Roblox's curated training datasets and systems "do not retain or communicate that information, thereby severing the connection between the work and the creator." Compl. ¶¶ 8, 80–81, 85, 93.

Roblox's "omission" cases do not change the result. *Dolls Kill, Inc. v. Zoetop Bus. Co.*, 2022 WL 16961477 (C.D. Cal. Aug. 25, 2022), involved alleged knockoff clothing where the defendant merely omitted the plaintiff's branding from non-identical imitation products; the court refused "to speculate that by merely omitting CMI, Defendants must have necessarily removed it." *Id.* at *4. That inferential gap does not exist where, as here, the defendant is alleged to have obtained and copied the original works themselves—with their CMI—before stripping it. *A'Lor Int'l, Ltd. v. Tapper Fine Jewelry, Inc.*, 2012 WL 12921035 (C.D. Cal. Aug. 8, 2012), similarly involved alleged knockoff jewelry where the defendant allegedly failed to include the plaintiff's copyright notice on new products. In *Harrington v. Pinterest, Inc.*, 2022 WL 4348460 (N.D. Cal. Sept. 19, 2022), the plaintiff alleged wholesale metadata stripping but did not plead facts showing Pinterest knew that the specific works contained metadata constituting CMI when uploaded, or that removal of that metadata would aid infringement. *Id.* at *4–8. These cases are unlike the case here because Plaintiff alleges that Roblox used Objaverse-derived source references to obtain copies of 3D works accompanied by CMI, and then deliberately processed those copies through a

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**CASE NO. 5:26-CV-02642-BLF**

pipeline designed to preserve their expressive content for AI training while stripping the accompanying creator, source, license, attribution, and NoAI information.

The allegation that CMI loss was a foreseeable and inherent consequence of Roblox's large-scale AI ingestion process explains why Roblox had reason to know what its pipeline would do; it does not concede, or provide a "tell," that no removal occurred. Mot. at 8. Roblox cites *Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772 (N.D. Cal. 2024), but there the court dismissed § 1202(b) claims because the plaintiffs alleged only, in conclusory fashion, that OpenAI removed CMI "[b]y design," without facts showing how CMI was removed during training. *Id.* at 779. The court contrasted those allegations with *Doe 1*, where plaintiffs alleged where CMI appeared, that defendants knew it appeared repeatedly, and that defendants trained the programs to ignore or remove it. *Id.* This case is like *Doe 1*, not *Tremblay*.

Additionally, Roblox's reliance on *New York Times* is, at best, selective. That decision addressed three separate complaints. The court found the Times's allegations insufficient because the Times relied primarily on the absence of CMI in model outputs and offered only a conclusory allegation that CMI must have been removed "by design" during training. *N.Y. Times Co. v. Microsoft Corp.*, 777 F. Supp. 3d 283, 314–15 (S.D.N.Y. 2025). But the court sustained the Daily News and CIR plaintiffs' complaints because they alleged a concrete extraction process whereby OpenAI used content-extraction tools that separated the expressive article text from webpage material containing CMI, including copyright notices, footers, author information, and title information, while copying forward only the main content for training. *Id*. at 315. Plaintiff's allegations here resemble the Daily News and CIR allegations. Plaintiff does not infer removal based on the absence of CMI in Roblox outputs, he alleges that Roblox processed works, which were originally distributed with CMI, into AI-training inputs that retained the expressive 3D content while removing the accompanying CMI. Compl. ¶¶ 65–69, 81, 88–90, 96–107, 110–12, 150–51, 162–64.

Roblox's voicemail analogy, Mot. at 9, fails for the same reason. Tone, pauses, and background sounds are not CMI; creator identity, source links, license terms, attribution requirements, and NoAI restrictions are. The Complaint alleges not generic format conversion, but a pipeline that retained the expressive 3D content while severing the rights-management information that accompanied the works. Compl. ¶¶ 65–69, 81, 88–90, 96–107, 110–12, 150–51, 162–64.

7

Roblox next argues that Plaintiff has not identified any specific work from which CMI was removed. Mot. at 9. But Plaintiff does allege the works at issue: his original 3D works, which he created, owns, published online, and which were included in Objaverse-XL and related derivative datasets used to train Roblox's AI systems. Compl. ¶¶ 28–29. Roblox's "specific works" argument overstates what is required at the pleading stage. Plaintiff need not attach a work-by-work catalog of every affected 3D model where the Complaint already identifies Plaintiff's original works, alleges those works were included in Objaverse-XL and related derivative datasets used to train Roblox's AI systems, identifies the CMI accompanying those works, and alleges the process Roblox used to obtain and process them into CMI-stripped training inputs. Compl. ¶¶ 28–29, 65–69, 81, 88–90, 96–107, 110–12, 150–51, 162–64. And to the extent Roblox demands more detail about which works it downloaded and how it processed those through its own proprietary systems, those facts are uniquely within Roblox's possession and are not required to be pled at this stage. *See Lopez v. Apple, Inc.*, 558 F. Supp. 3d 821, 826 (N.D. Cal. 2021).

Roblox's cases on this point are not persuasive. In *Free Speech Systems*, a photographer alleged that *someone* stripped copyright information from his photographs, but the complaint did not allege who stripped the CMI, what was stripped, or when it happened. *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1175 (N.D. Cal. 2019). The plaintiff "simply reiterate[d] the legal standard and allege[d] no facts in support." *Id*. In *Andersen v. Stability AI Ltd.*, 700 F. Supp. 3d 853 (N.D. Cal. 2023), plaintiffs sued several AI companies together, including Stability AI, DeviantArt, and Midjourney, and alleged only that "Defendants" stripped CMI when they "trained Stable Diffusion," without saying which company did what. *Id.* at 872. The court there could not tell who was responsible as it observed, "there are no facts at all regarding DeviantArt's or Midjourney's training of Stable Diffusion." *Id*. On that record it required plaintiffs to "allege plausible facts regarding which defendants they contend did the stripping or altering . . . and when that occurred," and to stop pleading violations by undifferentiated "defendants." *Id*. The concerns outlined by the courts in these cases do not exist here.

Roblox next argues, obliquely, that the CMI alleged here was never attached to the works themselves, and thus that Roblox could not have removed it. Mot. at 9–10. Roblox isolates the NoAI tag for this argument and posits that it exists only on the webpage hosting the works and was not "conveyed in

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO. 5:26-CV-02642-BLF**

connection with" the works. Id. But numerous courts applying that language would disagree and have held that information located on, adjacent to, or in close proximity to, the displayed work is CMI "conveyed in connection with" a work. *See Logan v. Meta Platforms, Inc.*, 636 F. Supp. 3d 1052, 1063 (N.D. Cal. 2022) (holding that identifying information "immediately beneath" Wikimedia photographs was sufficiently close to qualify as CMI); *Powers v. Caroline's Treasures Inc.*, 382 F. Supp. 3d 898, 904 (D. Ariz. 2019) ("A number of courts have held that for CMI to be protected, it must be near, around, or on the original work."); *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1187–88 (9th Cir. 2016) (treating image credits appearing near, but not on, photographs as CMI and reversing summary judgment for the defendant on § 1202(b) claims); *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 305 (3d Cir. 2011) (photographer's name in a gutter credit near the image qualified as CMI); *Pac. Studios Inc. v. W. Coast Backing Inc.*, 2012 WL 12887637, at *2–3 (C.D. Cal. Apr. 18, 2012) (denying motion to dismiss; alphanumeric designation "placed in the border of an online image for purposes of identification" is protectable CMI under § 1202(c), whose plain language is "clear, unambiguous, and quite broad"). Nor does § 1202(c) require that CMI be embedded in the work's file: it protects information "conveyed in connection with" copies of the work, and courts reject "unreasonably crabbed" readings that would make liability turn on embedding. *GC2 Inc. v. Int'l Game Tech. PLC*, 255 F. Supp. 3d 812, 821–22 (N.D. Ill. 2017) (copying artwork without the copyright notice that had accompanied it adequately alleged removal).

Roblox's cite to *Logan* for support on this point is confusing. Mot. at 10. As noted above, the court did find certain CMI to be conveyed in connection with the works. The only category of CMI that the court in *Logan* found not to be "conveyed in connection" with the work was a generic copyright tag at the bottom of each Facebook user page, separated from the page content and not located on or next to the works. *Logan,* 636 F. Supp. 3d at 1062. Same goes for *SellPoolSuppliesOnline.com LLC v. Ugly Pools Arizona, Inc.*, 344 F. Supp. 3d 1075 (D. Ariz. 2018), *aff'd*, 804 F. App'x 668 (9th Cir. 2020) where the alleged CMI was a generic copyright notice at the bottom of a webpage, separated from the photos in a shaded footer and not located on or near the works. *Id*. at  1083.

But Plaintiff's NoAI designation was not a stray copyright notice buried somewhere distant on Sketchfab, nor a general website term disconnected from any particular work. As alleged, when a creator

9

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO. 5:26-CV-02642-BLF**

applies the NoAI designation to a model, Sketchfab embeds a corresponding machine-readable tag within that specific model's webpage—the very page where the model is displayed and from which it is downloaded—communicating that the work may not be used in generative-AI datasets or training. Compl. ¶¶ 55–60. Plaintiff applied that designation, work by work, to each of his more than four hundred models. Id. ¶ 123. The tag's machine-readable form is a feature, not a defect: its intended audience was precisely the automated systems that access and process models for AI training—the same kind of systems Roblox allegedly used to obtain Plaintiff's works. Id. ¶¶ 55–58, 63–64, 123–24. Section 1202(c) expressly protects CMI conveyed "in digital form," and CMI need not "be placed directly upon or affixed to a copyrighted work" to be conveyed in connection with it. *Powers*, 382 F. Supp. 3d at 906 (notation "off to the side or underneath" works could be CMI). Roblox's argument runs contrary to established caselaw treating information placed on, near, or directly adjacent to the work as "conveyed in connection with" that work.

Roblox's citation to *Asia Economic Institute v. Xcentric Ventures LLC*, 2011 WL 2469822 (C.D. Cal. May 4, 2011), for the notion that an HTML meta tag is "not visible," does not persuade. *Asia Economic* was a summary-judgment ruling on Section 230, RICO, and defamation theories; it contains no § 1202 or CMI analysis at all. The line Roblox quotes is a factual description of search-engine indexing, not a holding—and the very next sentence confirms that meta tags are perceivable: "However, individuals with basic technical knowledge who choose to view the actual HTML code for a report's webpage can view the meta tags that are used for indexing purposes." *Id*. at *3. In any event, § 1202(c) expressly protects CMI conveyed "in digital form"; nothing in the statute limits protection to information visible to the naked eye. 17 U.S.C. § 1202(c).

Finally, Roblox argues for the Court to create an "identicality requirement" in the DMCA. Mot. at 10. There is no support in the statute for such a requirement. Section 1202(b)(1) prohibits intentional removal or alteration of CMI and does not require Plaintiff to allege that Roblox later distributed anything, let alone an identical copy of his original work. 17 U.S.C. § 1202(b)(1). Section 1202(b)(3) applies to distribution of "works" or "copies of works" knowing that CMI has been removed, but it likewise contains no "identical copy" requirement. 17 U.S.C. § 1202(b)(3). Further, numerous courts have rejected a rigid identicality rule. *See Beijing Meishe Network Tech. Co. v. TikTok Inc.*, 2024 WL 3522196, at *9 (N.D.

10

Cal. July 23, 2024) (declining to dismiss § 1202 claim where the accused source code was alleged to be "strikingly similar," not identical, and recognizing a split in authority); *Splunk Inc. v. Cribl, Inc.*, 662 F. Supp. 3d 1029, 1053 (N.D. Cal. 2023) (CMI removal from derivative works sufficient at pleading stage); *ADR Int'l Ltd. v. Inst. for Supply Mgmt., Inc.*, 667 F. Supp. 3d 411, 427 (S.D. Tex. 2023) (rejecting identicality requirement based on statutory text and legislative history); *ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254, 272 (D. Mass. 2016) ("the definition of CMI neither states nor implies that CMI can only exist with regard to the full version of a work"); *New Parent World, LLC v. True To Life Prods., Inc.*, 2024 WL 4277865, at *2-3 (D. Ariz. Sept. 24, 2024) (holding §§ 1202(a) and (b) "do not require identical copies" and observing that the caselaw asserting such a requirement "does not support its holding"). And *Andersen*—on which Roblox also relies—applied the purported requirement only to a theory attacking non-identical AI *outputs*, while acknowledging that the issue remains unsettled. *Andersen v. Stability AI Ltd.*, 744 F. Supp. 3d 956, 971 (N.D. Cal. 2024).

At a minimum, the identicality issue is unsettled in the Ninth Circuit. Although Roblox cites *Doe 1 v. GitHub, Inc.*, 2024 WL 235217, at *8–9 (N.D. Cal. Jan. 22, 2024), for support, that case is not persuasive because the court later certified the issue of whether an "identicality" requirement exists within § 1202 of the DMCA for interlocutory appeal noting there are "substantial grounds" for disagreement. *Doe 1 v. GitHub, Inc.*, 2024 WL 4336532, at *2 (N.D. Cal. Sept. 27, 2024), *appeal argued*, No. 24-7700 (9th Cir. Feb. 11, 2026). In any event, Plaintiff's theory does not turn on the output-identicality debate at all. The Complaint alleges that Roblox obtained actual copies of Plaintiff's 3D works—identical copies, downloaded from the repositories where they were distributed with CMI—and removed or severed that CMI during processing. Compl. ¶¶ 87, 94–104, 111, 143–46. The § 1202(b)(1) violation was complete upon that removal; what Roblox's pipeline did with the copies afterward cannot retroactively erase it.

Roblox's other cited authority on this point—*Frost-Tsuji Architects v. Highway Inn, Inc.*, 2015 WL 263556 (D. Haw. Jan. 21, 2015) (Mot. at 10)—does not change the result. *Frost-Tsuji* is inapplicable because the opinion cited by Roblox (a motion for reconsideration of the court's prior summary judgment ruling) was decided with the benefit of a fully developed factual record. *Id.* at *4. The court reasoned that plaintiff failed to raise a genuine issue of material fact as to whether removal of CMI had occurred because

11

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**CASE NO. 5:26-CV-02642-BLF**

plaintiff alleged only that defendant possessed a derivative work without CMI. *Id*. at *3–4. Much more is alleged here, including that Roblox obtained copies of the original works from repositories where CMI accompanied the works, and then removed or severed that CMI during preprocessing of the works into training inputs. Compl. ¶¶ 81, 88–90, 96–107, 110–12, 150–51, 162–64.

### 2. The Complaint Plausibly Alleges That Roblox Intentionally Removed CMI.

Roblox next argues that Plaintiff has not alleged the removal of CMI was intentional. Mot. at 10-12. But intent may be alleged generally, inferred from the facts alleged, and pleaded through circumstantial facts. *See Doe 1*, 672 F. Supp. 3d at 857–58. Caselaw is clear: a defendant acts intentionally when it deliberately designs or uses a process that strips or separates CMI from works, even when removal occurs in an automated way.

In *Doe 1*, the plaintiffs alleged that CMI routinely appeared in licensed code used to train Codex and Copilot, that defendants knew such CMI appeared in the training data, and that defendants trained the programs to ignore or remove CMI so the programs would no longer reproduce it. *Id*. at 858–59. The court held those allegations sufficient to infer that defendants "intentionally designed the programs to remove CMI." *Id*. at 858. Other cases involving DMCA violations for AI training have reached the same result. For example, in *Kadrey v. Meta Platforms, Inc.*, the court held that plaintiffs sufficiently alleged intentional removal of CMI under § 1202(b)(1) where Meta allegedly knew its AI model was prone to memorizing and outputting CMI unless CMI was removed from training data, and then took steps to reduce the likelihood that the model would reproduce CMI. 2025 WL 744032, at *2 (N.D. Cal. Mar. 7, 2025). *See New York Times*, 777 F. Supp. 3d at 314–16 (plausible CMI removal where extraction tools allegedly separated expressive content from author, title, copyright notices, and other CMI during training-set creation); *Concord Music Grp., Inc. v. Anthropic PBC*, 2025 WL 4808984, at *4–6 (N.D. Cal. Oct. 6, 2025) (plausible scienter where defendant allegedly chose extraction tools that removed CMI from training datasets); *The Intercept Media, Inc. v. OpenAI, Inc.*, 767 F. Supp. 3d 18, 29–31 (S.D.N.Y. 2025) (plausible intentional removal where training-set extraction allegedly omitted CMI).

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**CASE NO. 5:26-CV-02642-BLF**

Roblox may note that the *Kadrey* plaintiffs' § 1202(b)(1) claim was later resolved against them at summary judgment. That ruling rested entirely on the court's antecedent holding—"as a matter of law based on the evidence presented at summary judgment"—that Meta's copying was fair use, so its removal of CMI "could not have furthered an act of infringement." *Kadrey v. Meta Platforms, Inc.*, 2025 WL 1786418, at *1 (N.D. Cal. June 27, 2025). Roblox has raised no fair-use defense, there is no evidentiary record, and *Kadrey's* pleading-stage holding remains instructive. Indeed, Judge Lee relied on it in sustaining the § 1202(b) claims in *Concord* months after the summary-judgment ruling. *Concord*, 2025 WL 4808984, at *5.

Here, the Complaint alleges that Roblox used Objaverse-derived datasets as a source map to obtain Plaintiff's and Class Members' 3D works, and then processed those works through machine-learning pipelines that separated the expressive content of the works from the CMI that accompanied them when originally distributed. Compl. ¶¶ 87, 95–107, 108–12, 144–51. The allegations here do not plead an accidental loss of metadata; they plead that Roblox knowingly used a training pipeline, which it designed and created, that preserved the expressive value of Plaintiff's and Class Members' 3D works for AI training while removing or severing the CMI that made those works traceable, attributable, and license-compliant.

Roblox cites *Logan*, 2023 WL 3668520, for the proposition that CMI removal is not intentional when accomplished through some uniform technical process. Mot. at 8, 11. But *Logan* held only that plaintiffs did not plausibly allege intentional removal where Facebook's thumbnailing function cropped every photograph to the same small, uniform size, so anything outside the crop area—including the plaintiff's visible signature (CMI)—was excluded as an "unintended side effect" of generating thumbnails. *Logan*, 2023 WL 3668520 at *6–7. This case is different. Plaintiff does not merely allege that a signature at the edge of a photograph was incidentally cropped out. Plaintiff alleges that Roblox purposefully processed copies of 3D works that were distributed with CMI into training representations that retained the works' expressive content while severing the accompanying CMI. Compl. ¶¶ 65–69, 81, 88–90, 96–107, 110–12, 150–51, 162–64. Therefore, the removal of CMI here is not an unavoidable consequence; it is an avoidable design choice.

13

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**CASE NO. 5:26-CV-02642-BLF**

Roblox attempts to persuade this Court otherwise with cases decided at summary judgment, but those cases say nothing about what must be pleaded. Roblox cites *Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116 (C.D. Cal. 1999), *aff'd in part, rev'd in part on other grounds*, 336 F.3d 811 (9th Cir. 2003), a summary-judgment decision in which the plaintiff's copyright notices appeared only in the text surrounding his images on the source websites — "[b]ecause these notices do not appear in the images themselves, the Ditto crawler did not include them when it indexed the images." *Id.* at 1122. On that record, nothing was ever removed from any work, and there was no evidence of intent "rather than merely an unintended side effect of the Ditto crawler's operation." *Id.* The search engine, moreover, gave users "the name of the Web site from which Defendant obtained the image, where any associated copyright management information would be available, and an opportunity to link there," and warned that use restrictions might apply. *Id.* Here, by contrast, Plaintiff alleges that CMI accompanied his works on the very pages from which Roblox obtained them, that Roblox's own pipeline severed it, and that Roblox's systems preserve no link back to the creators, their licenses, or their restrictions. Compl. ¶¶ 64–68, 80–88, 95–107.

*Stevens* is no different. The district court there granted summary judgment because the plaintiffs "present[ed] no evidence that Corelogic intentionally removed CMI, as opposed to removal being an unintended side effect of the fact that the software platform was based on a library that failed to retain metadata by default." *Stevens v. Corelogic, Inc.*, 194 F. Supp. 3d 1046, 1052–53 (S.D. Cal. 2016), *aff'd*, 899 F.3d 666 (9th Cir. 2018). CoreLogic, moreover, was a software vendor: the "act of uploading, which is what Plaintiffs allege[d] led to the removal," "was done by a third party actor." *Id.* at 1052. Whatever the evidentiary record may ultimately show here, at the pleading stage Plaintiff alleges that Roblox itself acquired the works and built and deployed its own preprocessing pipeline—one that kept everything Roblox needed from the works, their expressive geometry, structure, and textures, while discarding the creator, license, attribution, and NoAI information that accompanied them. Compl. ¶¶ 95–107, 111, 144–51. That alleged design choice, not a third-party software default, distinguishes both *Stevens* and *Kelly*.

14

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**CASE NO. 5:26-CV-02642-BLF**

## B.    Plaintiff Alleges Distribution Sufficient to Sustain a § 1202(b)(3) Claim.

Roblox next argues that Plaintiff's § 1202(b)(3) claim fails because Plaintiff does not allege Roblox distributed copies of works with CMI removed. Mot. at 12–13. A plaintiff states a claim under Section 1202(b)(3) by alleging "(1) the existence of CMI in connection with a copyrighted work; (2) that a defendant 'distribute[d] … works [or] copies of works'; (3) while 'knowing that [CMI] has been removed or altered without authority of the copyright owner or the law'; and (4) while 'knowing, or … having reasonable grounds to know' that such distribution 'will induce, enable, facilitate, or conceal an infringement.'" *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020) (quoting 17 U.S.C. § 1202(b)(3)). Courts have sustained § 1202(b)(3) claims against generative-AI developers at the pleading stage. *See In re OpenAI, Inc. Copyright Infringement Litig.*, 2025 WL 3635559, at *5–7 (S.D.N.Y. Dec. 15, 2025) (allegations that an AI developer's system "create[s] and provide[s] to third parties copies of [plaintiff's] works without CMI," with ownership of outputs transferred by its terms of use, "went beyond public display and were 'distributions'").

That is the conduct pleaded here: Roblox obtained and copied the works, severed their CMI in preprocessing, and distributed the CMI-stripped copies through its commercial AI platform. Compl. ¶¶ 15, 92–104, 105–112, 159–164. Roblox contends that the Complaint only alleges internal "use" and attributes any distribution to third-party dataset creators. Mot. at 12. But the Complaint alleges that Roblox "distributed the CMI-stripped works through its revenue-generating AI platform." Compl. ¶ 15. And it pleads the facts that make that distribution plausible: Roblox incorporated the CMI-stripped copies of Plaintiff's works into the training datasets and systems behind Cube 3D, which Roblox serves to millions of users and developers through its Mesh Generation API. *Id.* ¶¶ 105, 108–112, 160–161. These allegations are sufficient at the pleading stage. Plaintiff need not identify the precise technical form of each copy or each downstream transfer before discovery into Roblox's proprietary systems.

Neither case Roblox cites changes this conclusion. As noted above (*see supra* § A.1), *Frost-Tsuji* was a ruling on reconsideration of a summary-judgment order. The defendants there had shown they were not responsible for any removal, shifting the burden to the plaintiff to raise a genuine issue of fact, which plaintiff failed to carry. *Frost-Tsuji*, 2015 WL 263556, at *2–4. Roblox's other case, *Robert L. Stark*

15

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO. 5:26-CV-02642-BLF**

*Enters., Inc. v. Neptune Design Grp., LLC*, 2017 WL 1345195 (N.D. Ohio Apr. 12, 2017), is similarly unavailing: it too was decided at summary judgment, on a full evidentiary record, where the counterclaimant "wholly fail[ed] to show that the resulting works [we]re 'copies'" of its plans. *Id.* at *11. Here, there is no record to weigh, and the Complaint alleges what those cases lacked: that Roblox obtained and copied the works themselves, stripped their CMI, and distributed the CMI-stripped copies through its commercial AI platform. Compl. ¶¶ 15, 160–162. Whether the evidence will bear those allegations out is a question for discovery, not a basis for dismissal.

Roblox's registration argument fares no better. Roblox contends that applying § 1202(b)(3) here would let Plaintiff "bypass" the Copyright Act's registration requirement and damages limitations. Mot. at 13. But Congress made that choice, not Plaintiff. Section 411(a)'s registration prerequisite applies by its terms only to a "civil action for infringement of the copyright." 17 U.S.C. § 411(a). Plaintiff does not sue for infringement; he sues under Chapter 12, which supplies its own cause of action to "any person injured by a violation of section 1201 or 1202," *id.* § 1203(a), and its own remedies, *id.* § 1203(b)–(c), with no registration prerequisite. Compl. ¶¶ 69–74; *see Pac. Studios*, 2012 WL 12887637, at *3 (rejecting argument that a § 1202 claim requires copyright registration). Likewise, § 412 limits statutory damages and fees "as provided by sections 504 and 505" in infringement actions—not the separate remedies Congress enacted in § 1203(c) for the distinct wrong of tampering with copyright management information. Roblox's "end-run" theory is a policy quarrel with the statute Congress wrote, and it proves far too much: on Roblox's reading, anyone could freely strip CMI from—and distribute stripped copies of—the works of the millions of creators who have not registered them. Nothing in the DMCA suggests Congress intended that result.

C.     **Plaintiff Plausibly Alleges That Roblox Knew or Had Reasonable Grounds to Know That Removing CMI Would Induce, Enable, Facilitate, or Conceal Infringement.**

Roblox next attacks the latter half of the double-scienter requirement, arguing that Plaintiff has not alleged that Roblox knew or had reasonable grounds to know that its conduct would induce, enable, facilitate, or conceal infringement. Mot. at 13–15. This argument overreads *Stevens* and asks the Court to impose a summary-judgment evidentiary burden at the pleading stage. *Stevens* held that a plaintiff

16

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**CASE NO. 5:26-CV-02642-BLF**

ultimately must make an "affirmative showing" that CMI removal is connected to likely infringement. *Stevens v. CoreLogic, Inc.*, 899 F.3d 666, 674–75 (9th Cir. 2018). But courts in this District have rightly declined to treat *Stevens* as a Rule 12 bar where the complaint alleges facts supporting a plausible inference that the defendant knew removal carried a substantial risk of inducing, enabling, facilitating, or concealing infringement. *See Izmo, Inc. v. Roadster, Inc.*, 2019 WL 13210561, at *3–4 (N.D. Cal. Mar. 26, 2019); *Schneider v. YouTube, LLC*, 2022 WL 3031212, at *2 (N.D. Cal. Aug. 1, 2022); *see also Robbins v. Oakley, Inc.*, 2018 WL 5861416, at *3 (C.D. Cal. Sept. 27, 2018).

The Complaint easily meets that standard. Section 1202(b) does not require Plaintiff to plead a completed copyright-infringement claim as a separate count, nor does it require him to identify a downstream user who has already generated an infringing Cube 3D output. Indeed, *Stevens* expressly recognized that a plaintiff need not establish "that any specific infringement has already occurred." 899 F.3d at 675. The statute requires knowledge that removal will facilitate or conceal "an infringement," which includes the defendant's own infringement. *See Mango*, 970 F.3d at 172–73.

Here Plaintiff alleges that removal of CMI enabled and concealed Roblox's own unauthorized copying and commercial use of the works. CMI expressly includes "terms and conditions for use of the work." 17 U.S.C. § 1202(c)(6). The Complaint alleges that the works referenced through Objaverse-XL were governed on a work-by-work basis by conditions that included attribution requirements, noncommercial-use restrictions, share-alike obligations, and, for certain Sketchfab-hosted works, restrictions prohibiting AI-training use. Compl. ¶¶ 38–49, 52–63, 79, 92–93, 123–30. It further alleges that Roblox obtained copies of those works from the repositories where they were distributed with that CMI, removed or severed the CMI during preprocessing, and then used the resulting representations to train and commercialize Cube 3D without an attribution mechanism for the underlying creators or a filtering system for noncommercial restrictions. Id. ¶¶ 87–88, 94–112, 141–50. "When a licensee exceeds the scope of the license granted by the copyright holder, the licensee is liable for infringement." *Oracle USA, Inc. v. Rimini St., Inc.*, 879 F.3d 948, 954 (9th Cir. 2018), *rev'd on other grounds*, 139 S. Ct. 873 (2019).

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO. 5:26-CV-02642-BLF**

Roblox's own framing concedes the point. Roblox emphasizes that Plaintiff selected the "permissive" CC-BY license for his Sketchfab models. Mot. at 4. But CC-BY conditions reuse of the works on precisely what Roblox allegedly discarded: attribution. Compl. ¶¶ 41, 46, 116, 120. A use that strips the creator's identity is not a use that license permits—and removing the attribution CMI is what enabled that unauthorized use and concealed it.

The Complaint also explains precisely why the removed CMI mattered. Because the licenses varied by work, compliance required Roblox to preserve and track attribution, license designations, and related CMI for each individual asset. Compl. ¶¶ 42–44. Yet Roblox allegedly maintained no system capable of tracking and reproducing that information throughout the process by which the works were copied, converted, rendered, normalized, and ingested into AI-training inputs. Id. ¶¶ 45–46. Roblox's practices therefore made compliance with attribution and licensing requirements effectively impossible and created a substantial certainty that restricted works would be copied and used in AI training without authorization or compliance with their governing terms. Id. ¶¶ 46–49. The removal thus did not merely create a generalized possibility of infringement; it eliminated the very information needed to determine whether Roblox could lawfully copy and use each work, provide required attribution, respect restrictions on commercial or AI-training use, and trace the works back to their creators. Id. ¶¶ 43–49, 80–88, 100–12, 148–50.

Roblox's output-focused argument misses this theory entirely. Mot. at 14. Plaintiff need not allege that Cube 3D generated an output identical to one of his works because the infringement allegedly enabled and concealed by the removal occurred in Roblox's own acquisition, copying, preprocessing, and commercial AI-training use of the underlying works.

Roblox likewise incorrectly asserts that "[t]he only allegation even referencing Roblox's knowledge" concerns Roblox's awareness of its preprocessing operations in paragraph 104 of the Complaint. Mot. at 14. But the Complaint alleges much more. Roblox knew or had reasonable grounds to know that the works referenced in Objaverse-XL came from platforms that distributed models together with creator attribution, license designations, and other CMI governing downstream use; that its preprocessing pipelines did not preserve that information; and that removing the CMI ensured that neither

18

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**CASE NO. 5:26-CV-02642-BLF**

Cube 3D nor its users could identify the creators or comply with attribution and commercial-use restrictions. Compl. ¶¶ 104, 110–12, 148–50. Count II further alleges that Roblox knew the CMI had been removed without authority and knew or had reasonable grounds to know that using and distributing the resulting works, or representations of them, would induce, enable, facilitate, or conceal infringement. Id. ¶¶ 160–64. Those allegations are supported by the detailed source-to-training pipeline pleaded throughout the Complaint.

Recent cases support this inference. In *Concord Music*, the court sustained § 1202(b) allegations where the defendant allegedly used dataset-curation tools that removed CMI and thereby concealed its own unauthorized training use. 2025 WL 4808984, at *4–6. The court reasoned that because the defendant allegedly copied works to curate a training dataset and removed CMI from them, it was plausible to infer that the defendant acted "knowing that removing the CMI would help conceal the alleged infringement." *Id*. at *5 (quoting *Batra v. PopSugar, Inc.*, 2019 WL 482492, at *2 (N.D. Cal. Feb. 7, 2019)). *Kadrey*, *Schneider*, and *New York Times* likewise support Plaintiff. In *Kadrey*, the court held that plaintiffs plausibly alleged CMI removal to conceal infringement where Meta knew its model could memorize and reproduce CMI and took steps to prevent that result. 2025 WL 744032, at *2. In *Schneider*, allegations that YouTube knew uploaded works routinely contained CMI, understood the value of that information to copyright owners, and knew that works missing CMI could facilitate infringement supported a plausible inference of scienter. 2022 WL 3031212, at *2. And *New York Times* recognized that § 1202(b) may be satisfied where removal of CMI conceals the defendant's own alleged infringement. 777 F. Supp. 3d at 315–16. Here Plaintiff alleges that Roblox used Objaverse-derived references to identify and obtain works accompanied by CMI; processed them into CMI-stripped representations; and used those representations to train and commercialize Cube 3D through Roblox's revenue-generating ecosystem. Compl. ¶¶ 64–68, 80–88, 92–112, 141–50, 160–64.

None of Roblox's cases supports dismissal on these allegations. Mot. at 14–15. In *Tremblay*, the plaintiffs failed to allege why the absence of CMI gave OpenAI reason to know that infringement would be facilitated or concealed. 716 F. Supp. 3d at 779. Roblox then quotes a passage from *Raw Story Media, Inc. v. OpenAI, Inc.*, 756 F. Supp. 3d 1, 6 (S.D.N.Y. 2024). But that passage questioned, in the context of

19

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**CASE NO. 5:26-CV-02642-BLF**

Article III standing, whether removal without dissemination had a historical or common-law analogue sufficient to establish concrete injury. *Id.* at 6. It did not hold that dissemination is an element of § 1202(b)(1), much less that a defendant cannot know removal will conceal its own infringement where the works are copied and used in a commercial training pipeline. The plaintiff in *Harrington v. Pinterest, Inc.*, 2021 WL 4033031 (N.D. Cal. Sept. 3, 2021), alleged no facts showing how the defendant's conduct affected any particular infringement or created a likely recurring pattern of infringement. *Id.* at *6. In *O'Neal v. Sideshow, Inc.*, 583 F. Supp. 3d 1282 (C.D. Cal. 2022), the plaintiff alleged "nothing" concerning the defendant's knowledge that removal would likely result in infringement. *Id.* at 1288.

Here, Plaintiff identifies both the infringement and the mechanism: Roblox allegedly copied and commercially used works without preserving the per-work attribution and license information necessary to keep that use within the scope of the governing terms, and then integrated the resulting system into its developer platform. Compl. ¶¶ 38–49, 80–112, 141–50. The Complaint further alleges that Roblox's process made compliance effectively impossible and created a substantial certainty that restricted works would be used without authorization. Id. ¶¶ 43–49. And the Complaint expressly alleges what Roblox knew about the source and CMI accompanying the works, what Roblox knew its preprocessing pipeline would remove, and why that removal would prevent Roblox and its users from identifying the creators or complying with applicable license restrictions. Id. ¶¶ 104, 110–12, 148–50, 163–64. Thus, Plaintiff's allegations plausibly support the inference that Roblox knew or had reasonable grounds to know that removal of CMI would enable or conceal infringement.

### D.    Plaintiff Has Adequately Alleged Standing

Finally, Roblox argues that Plaintiff's allegations fail to confer Article III standing based on lack of concrete injury and traceability. Mot. at 15–17. Roblox challenges Plaintiff's standing under Rule 12(b)(1) on the face of the Complaint. That "facial attack" requires the Court to assume the truth of Plaintiff's allegations and draw all reasonable inferences in his favor. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO. 5:26-CV-02642-BLF**

Standing under Article III requires a plaintiff to allege an injury in fact that is fairly traceable to the defendant's challenged conduct and likely to be redressed by a favorable decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An injury in fact must be concrete and particularized, but concrete injuries include both tangible and intangible harms. *Id*. at 339–40. "Article III standing requires a concrete injury even in the context of a statutory violation." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021). To satisfy Article III's concrete-harm requirement, a plaintiff must allege that the injury bears a "close relationship" to a harm traditionally recognized as actionable in American courts. *Id*. at 424–25. At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Article III traceability requires a plaintiff to show that the alleged injury was "likely caused" or "likely will be caused" by the defendant's challenged conduct. *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024). Stated another way, the injury must be "fairly traceable" to the defendant's conduct, not the independent action of a third party not before the court. *Lujan*, 504 U.S. at 560. Traceability is established where the harm alleged is "the predictable effect" of defendant's conduct. *See Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019). Here, Plaintiff's allegations establish both.

First, contrary to Roblox's assertions, Plaintiff's allegations are not relegated to vague assertions of emotional distress or harm to the 3D model ecosystem as a whole. Mot. at 16–17. Instead, Plaintiff alleges concrete, property-based injuries closely tied to traditional copyright harms. Courts addressing DMCA claims in similar AI contexts have held that injuries from unauthorized use of monetizable creative works are concrete. In *Kadrey*, Judge Chhabria rejected Meta's argument that DMCA § 1202 injuries were too abstract because the injury alleged was closely related to harms actionable in copyright. 2025 WL 744032, at *1. *The Intercept* reached the same conclusion, explaining that the DMCA "adds another stick to the bundle of property rights already guaranteed to an author in her work under traditional copyright law." 767 F. Supp. 3d at 26–28. And *EVOX* distinguished *Raw Story* while holding that unauthorized reproduction and distribution of individually licensable images alleged concrete monetary injury. 2025 WL 4690432, at *3.

21

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**CASE NO. 5:26-CV-02642-BLF**

The same is true here. Plaintiff alleges that he is a professional 3D artist who owns copyrights in his original works and that those works were included in Objaverse-derived datasets that Roblox used to train its AI systems. Compl. ¶¶ 24–30. Roblox allegedly trained Cube 3D on approximately 1.5 million assets, including Objaverse-derived works, and deployed it through its commercial Mesh Generation API. Id. ¶¶ 12–15, 31–32, 108–12. Plaintiff further alleges that Roblox removed or failed to preserve the attribution, license, NoAI, and other CMI governing those works during preprocessing and then used the resulting CMI-stripped representations to train Cube 3D. Id. ¶¶ 38–49, 52–68, 87–88, 95–112. That conduct impaired Plaintiff's ability to control, license, monetize, obtain attribution for, and police unauthorized use of his works.

Nor must Plaintiff plead a consummated lost sale. Concrete harm includes intangible injuries bearing a close relationship to traditionally recognized harms, *TransUnion*, 594 U.S. at 424–25, and the Complaint in any event pleads particularized economic injury: Plaintiff's portfolio- and attribution-based practice depends on his identity remaining associated with his works, Compl. ¶¶ 117–20; his forced mitigation reduced the visibility that had generated business opportunities, *id.* ¶ 126; and Roblox's conduct interfered with his ability to license and police his own works, *id.* ¶¶ 128–29. Those are Plaintiff's injuries, not the 3D model ecosystem's.

*Raw Story*, is not to the contrary. Its holding is expressly limited to plaintiffs who "do not allege that a copy of their work from which the CMI has been removed has been disseminated," 756 F. Supp. 3d at 5–6, and the defendants there conceded "that there are clear historical and common-law analogues" for injuries involving works put into the world stripped of attribution, *id.* at 7. Plaintiff alleges exactly what the *Raw Story* plaintiffs did not: that Roblox commercially exploited the CMI-stripped works through a revenue-generating platform. *Raw Story* is, in any event, an out-of-circuit district decision under active appellate review—the Second Circuit heard argument on March 18, 2026—and courts have found standing on materially identical allegations. *See Kadrey*, 2025 WL 744032, at *1; *The Intercept*, 767 F. Supp. 3d at 26–28; *EVOX*, 2025 WL 4690432, at *3.

*Second*, Plaintiff establishes traceability by alleging the causal link between his alleged harm and Roblox's removal of CMI. *N.Y. Times*, provides the necessary support. There, defendants argued that

22

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**CASE NO. 5:26-CV-02642-BLF**

plaintiffs had failed to connect the alleged removal of CMI to their claimed economic injuries, including lost licensing and subscription revenue. *N.Y. Times*, 777 F. Supp. 3d at 312–13. The court rejected that argument, holding that the alleged harm was fairly traceable to the removal of CMI because the removal concealed and facilitated defendants' infringement, allowing defendants to exploit plaintiffs' copyrighted works while depriving them of the economic benefits from licensing and lawful access to those works. *Id*. Although the same economic injury might theoretically occur absent CMI removal, that did not defeat standing because, accepting the complaint's allegations as true, the alleged injuries were the "predictable effect" of defendants' removal of CMI. *Id*. at 313 (quoting *Dep't of Com.*, 588 U.S. at 768).

The same reasoning applies here in greater force. Plaintiff alleges that Roblox used Objaverse-derived datasets to identify and obtain Plaintiff's and Class Members' copyrighted 3D works from repositories where those works were distributed with creator-identifying information, licensing terms, attribution requirements, NoAI restrictions, and other CMI. Compl. ¶¶ 37–48, 52–64, 79–88. Plaintiff further alleges that Roblox processed those works into AI-training inputs in a manner that removed or severed the accompanying CMI, then used those CMI-stripped representations to train and commercialize its generative AI technology. Id. ¶¶ 96–107, 145–51, 160–64. As alleged, removing the CMI eliminated the information necessary to identify the creator, provide attribution, comply with license conditions, honor NoAI restrictions, and police downstream unauthorized use, thereby enabling Roblox to exploit Plaintiff's works for commercial gain while simultaneously diminishing Plaintiff's ability to control, license, and monetize his own works. Id. ¶¶ 42–48, 52–64, 107, 150–51, 162–64. Those alleged injuries are therefore the direct and predictable consequence of the challenged removal of CMI and fairly traceable to Roblox's conduct.

Roblox cites *Doe 1*, (Mot. at 17), but *Doe 1* failed to allege the required "particularized injury" because there, plaintiffs did not allege "that they themselves have suffered the injury they describe[.]" 672 F. Supp. 3d at 850. That is not the case here. Plaintiff does allege that he was affected by Roblox's conduct and incurred harm as a result: his original 3D works were included in Objaverse-XL and related datasets used to train Roblox's AI systems, Roblox used CMI-stripped representations of Plaintiff's works as inputs to train commercial generative AI systems, and Plaintiff suffered harm as a professional artist who

23

invested substantial time, skill, and financial resources in developing those works. Compl. ¶¶ 28–29, 105–09, 112–13.

Roblox's authority on this point, *Manzanarez v. Madera Collection Servs.*, 722 F. Supp. 3d 1074 (E.D. Cal. 2024), is an FDCPA case involving conclusory allegations of emotional distress, confusion, and wasted time from a debt-collection letter, *id.* at 1080–81—not a DMCA § 1202 case involving property-based harm to creative works.

Roblox's traceability argument also confuses background events with the injury challenged in this action. Plaintiff does not seek to hold Roblox liable for the publication of Objaverse-XL in 2023 or for his decision to restrict access to his works after learning that they had been indexed. Those allegations are not the basis for standing. Plaintiff alleges a separate, later course of conduct by Roblox, including that Roblox used Objaverse-derived references to obtain copies of his works, removed their CMI during preprocessing, used the resulting CMI-stripped representations to train Cube 3D, and commercialized that system through its developer ecosystem. Id. ¶¶ 29, 87–88, 105–12, 141–51, 160–64. Objaverse's creation by third parties does not sever causation because, as alleged, Objaverse merely supplied the source map. It was Roblox that independently chose to use that map and obtain, process, and commercially exploit Plaintiff's works after removing their CMI.

Roblox's reliance on *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), is misplaced. *Clapper* was not a DMCA case; it rejected standing premised on a speculative chain of contingencies—that the Government might someday target the plaintiffs' foreign contacts under a challenged surveillance statute, might obtain approval, and might incidentally intercept the plaintiffs' own communications. *Id*. at 402–14. The Court held that such an attenuated chain of future possibilities, and costs self-inflicted in response to them, could not establish standing. *Id*. at 410–18. Plaintiff's theory depends on no such speculation. He alleges completed conduct by Roblox itself: Roblox released Cube 3D and publicly disclosed that it was trained on approximately 1.5 million 3D assets, including Objaverse-derived assets, Compl. ¶ 108; used Objaverse-derived references to identify and obtain copies of works distributed with creator-identifying information, license terms, attribution requirements, and other CMI, *id.* ¶ 111; processed those works into machine-learning inputs while removing that CMI, *id.*; and integrated Cube 3D into its revenue-generating

24

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**CASE NO. 5:26-CV-02642-BLF**

developer ecosystem, *id.* ¶¶ 109, 112. Unlike *Clapper*, this is present injury from completed conduct, together with a realistic risk of continued exploitation of Plaintiff's works by Roblox and the users of its generative 3D systems.

Roblox also briefly challenges Plaintiff's standing to seek injunctive relief. Mot. at 16. But what *Doe 1* arguably gives Roblox with one hand, it takes away with the other. Although damages standing was disallowed, the *Doe 1* court held that plaintiffs had standing to seek injunctive relief where they plausibly alleged a realistic danger that defendants' AI system would reproduce works without required CMI. *Doe 1*, 672 F. Supp. 3d at 851–52. Plaintiff alleges the same kind of future harm here. His works were included in datasets used to train Roblox's AI systems, Roblox independently obtained those materials with CMI intact using those datasets, Roblox processed them (including by removing CMI), and then Roblox used CMI-stripped representations of those works to train its generative 3D models which it then commercialized and made available for use by others. Compl. ¶¶ 28–29, 105–13, 150–51, 162–64. This conduct, which is wholly attributable to Roblox, creates a continuing future risk that Plaintiff's works will be exploited or reproduced without attribution, license compliance, or other CMI.

### E.    Any Dismissal Should Be With Leave to Amend.

Roblox's Motion should be denied. However, if the Court orders dismissal of any claim, it should be without prejudice and with leave to amend. This is the first complaint, Roblox's arguments turn largely on pleading specificity, and any perceived defects could be cured by amendment. *See* Fed. R. Civ. P. 15(a)(2); s*ee also Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (leave to amend should be granted unless amendment would be futile); *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). Therefore, if the Court orders dismissal of any claim, Plaintiff respectfully requests leave to amend.

### CONCLUSION

For these reasons, Plaintiff plausibly states claims under §§ 1202(b)(1) and 1202(b)(3). Therefore, the Court should DENY Roblox's Motion.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
CASE NO. 5:26-CV-02642-BLF**

Date: July 16, 2026                    Respectfully Submitted,


                                       */s/ William J. Edelman*
                                       William J. Edelman (SBN 285177)
                                       **MILBERG, PLLC**
                                       280 S. Beverly Drive-Penthouse
                                       Beverly Hills, CA 90212
                                       Tel: 866.252.0878
                                       wedelman@milberg.com

                                       Michael A. Acciavatti (admitted *pro hac vice*)
                                       **MILBERG, PLLC**
                                       405 East 50th Street
                                       New York, NY 10022
                                       Tel: 212.594.5300
                                       macciavatti@milberg.com


                                       *Attorney for Plaintiff and Proposed Class*

26

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**
**CASE NO. 5:26-CV-02642-BLF**

**CERTIFICATE OF SERVICE**

I, William J. Edelman, hereby certify that on July 16, 2026, I caused the foregoing document to be filed with the Clerk of the Court using the Court's CM/ECF system. Notice of this filing will be sent by operation of the Court's CM/ECF system to all counsel of record registered to receive electronic service in this action.

/s/ William J. Edelman
William J. Edelman