KEKER, VAN NEST & PETERS LLP
MICHELLE YBARRA - # 260697
mybarra@keker.com
EDWARD A. BAYLEY - # 267532
ebayley@keker.com
DEEVA SHAH - # 319937
dshah@keker.com
SPENCER MCMANUS - # 322824
smcmanus@keker.com
KEVIN SONG - # 325259
ksong@keker.com
LIAM BROWN - # 347518
liambrown@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendant ROBLOX CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AUSTIN BEAULIER, individually and on behalf of all those similarly situated,<br><br>                      Plaintiff,<br><br>    v.<br><br>ROBLOX CORPORATION,<br><br>                      Defendant. | Case No. 3:26-cv-02642-BLF<br><br>**DEFENDANT ROBLOX CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:        September 16, 2026<br>Time:       9:00 a.m.<br>Dept.:      Courtroom 1 – 5th Floor<br>Judge:     Hon. Beth Labson Freeman<br><br>Date Filed: March 26, 2026<br><br>Trial Date: Not Set |

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................... 1

II.     ARGUMENT............................................................................................................ 2

     A.    Plaintiff's Opposition Relies on Conclusory Statements and Indiscriminate Citations, Not Specific Allegations that Satisfy Specific Elements...................... 2

     B.    Plaintiff Fails to State a Claim for Relief Under Rule 12(b)(6)........................... 3

          1.    Plaintiff fails to plausibly allege actionable removal of CMI. .................. 3

               a.    Failure to plausibly allege "removal" of CMI (Counts I and II). ................................................................................................. 3

               b.    Failure to plausibly allege "intentional[]" removal (Count I)......... 8

          2.    Plaintiff fails to plausibly allege distribution under Section 1202(b)(3) (Count II). ............................................................................. 10

          3.    Plaintiff fails to allege any predicate infringement that Roblox's alleged CMI removal would induce, enable, facilitate, or conceal (Counts I and II).................................................................................... 11

     C.    Plaintiff Lacks Standing Under Rule 12(b)(1)..................................................... 13

     D.    The Court Should Not Grant Leave to Amend. ................................................... 15

III.    CONCLUSION........................................................................................................ 15

ROBLOX'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 3:26-cv-02642-BLF

6240603

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A'Lor Int'l, Ltd. v. Tapper Fine Jewelry, Inc.*,
  2012 WL 12921035 (C.D. Cal. Aug. 8, 2012) ........................................................................ 5

*Andersen v. Stability AI Ltd.*,
  700 F. Supp. 3d 853 (N.D. Cal. 2023) .................................................................................. 7

*Beaulier v. Meta Platforms*,
  No. 3:26-cv-02632-CRB (N.D. Cal.) ..................................................................................... 1

*Beaulier v. Microsoft Corp.*,
  No. 2:26-cv-01031-JNW (W.D. Wash.) ................................................................................. 1

*Beaulier v. NVIDIA Corp.*,
  No. 5:26-cv-02647-EKL (N.D. Cal.) ..................................................................................... 1

*Beijing Meishe Network Tech. Co. v. TikTok Inc.*,
  2024 WL 3522196 (N.D. Cal. July 23, 2024) ........................................................................ 8

*Braun v. Yahoo!, Inc.*,
  2018 WL 10809622 (N.D. Cal. Mar. 28, 2018) ..................................................................... 2

*In re Century Aluminum Co. Sec. Litig.*,
  729 F.3d 1104 (9th Cir. 2013) ............................................................................................... 4

*Concord Music Grp. v. Anthropic PBC*,
  2025 WL 4808984 (N.D. Cal. Oct. 6, 2025) .................................................................... 9, 12

*Dep't of Com. v. New York*,
  588 U.S. 752 (2019) ............................................................................................................ 14

*Doe 1 v. GitHub*,
  672 F. Supp. 3d 837 (N.D. Cal. 2023) ................................................................... 4, 5, 9, 15

*Dolls Kill, Inc. v. Zoetop Bus. Co.*,
  2022 WL 16961477 (C.D. Cal. Aug. 25, 2022) ..................................................................... 5

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ............................................................................................ 1, 4

*EVOX Prods., LLC v. Leland Stanford Junior Univ.*,
  2025 WL 4690432 (N.D. Cal. July 23, 2025) ...................................................................... 14

*Free Speech Sys., LLC v. Menzel*,
  390 F. Supp. 3d 1162 (N.D. Cal. 2019) .......................................................................... 7, 11

6240603

*Freidman v. Live Nation Merch., Inc.*,
    833 F.3d 1180 (9th Cir. 2016).................................................................................... 6

*Frost-Tsuji Architects v. Highway Inn, Inc.*,
    2015 WL 263556 (D. Haw. Jan. 21, 2015), *aff'd*, 700 F. App'x 674 (9th Cir.
    2017) ....................................................................................................................... 13

*FurnitureDealer.Net Inc. v. Amazon.com, Inc.*,
    2022 WL 891473 (D. Minn. Mar. 25, 2022)........................................................... 10

*GC2 Inc. v. Int'l Game Tech. PLC*,
    255 F. Supp. 3d 812 (N.D. Ill. 2017) ....................................................................... 6

*Global Weather Prods., LLC v. Al Jazeera Media Network*,
    2026 WL 1591091 (N.D. Cal. June 3, 2026) ....................................................... 7, 8

*Hoang v. ContextLogic, Inc.*,
    2023 WL 6536162 (N.D. Cal. Mar. 10, 2023)........................................................... 3

*ICONICS, Inc. v. Massaro*,
    192 F. Supp. 3d 254 (D. Mass. 2016) ....................................................................... 8

*Kadrey v. Meta Platforms*,
    2025 WL 744032 (N.D. Cal. Mar. 7, 2025)............................................... 8, 9, 12, 14

*Karam v. Meta Platforms, Inc.*,
    2025 WL 3079048 (N.D. Cal. Nov. 4, 2025)............................................................. 2

*Kelly v. Arriba Soft Corp.*,
    77 F. Supp. 2d 1116 (C.D. Cal. 1999), *aff'd in part, rev'd in part on other
    grounds*, 336 F.3d 811 (9th Cir. 2003) ................................................................ 8, 9

*Logan v. Meta Platforms*,
    2023 WL 3668520 (N.D. Cal. May 24, 2023) ................................................... 1, 4, 9

*Logan v. Meta Platforms*,
    636 F. Supp. 3d 1052 (N.D. Cal. 2022) ................................................................ 6, 7

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)................................................................................................. 13

*Murphy v. Millennium Radio Grp., LLC*,
    650 F.3d 295 (3d. Cir. 2011)..................................................................................... 6

*In re OpenAI, Inc. Copyright Infringement Litig.*,
    2025 WL 3635559 (S.D.N.Y. Dec. 15, 2025)......................................................... 11

*Pac. Studios Inc. v. West Coast Backing Inc.*,
    2012 WL 12887637 (C.D. Cal. Apr. 18, 2012)......................................................... 6

ROBLOX'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 3:26-cv-02642-BLF

6240603

*Raw Story Media, Inc. v. OpenAI, Inc.*,
   756 F. Supp. 3d 1 (S.D.N.Y. 2024) ................................................................................... 15

*Schneider v. YouTube LLC*,
   2022 WL 3031212 (N.D. Cal. Aug. 1, 2022)......................................................................... 12

*SellPoolSuppliesOnline.com LLC v. Ugly Pools Arizona, Inc.*,
   344 F. Supp. 3d 1075 (D. Ariz. 2018), *aff'd*, 804 F. App'x 668 (9th Cir. 2020) ..................... 7

*Splunk Inc. v. Cribl, Inc.*,
   662 F. Supp. 3d 1029 (N.D. Cal. 2023) ................................................................................. 8

*Spokeo v. Robins*,
   578 U.S. 330 (2016).......................................................................................................... 14

*Stevens v. Corelogic, Inc.*,
   194 F. Supp. 3d 1046 (S.D. Cal. 2016), *aff'd*, 899 F.3d 666 (9th Cir. 2018) .................8, 9, 11

*The Intercept Media, Inc. v. OpenAI, Inc.*,
   767 F. Supp. 3d 18 (S.D.N.Y. 2025) ................................................................................ 9, 14

*The New York Times Co. v. Microsoft Corp.*,
   777 F. Supp. 3d 283 (S.D.N.Y. 2025) ...................................................................5, 9, 10, 12

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021)........................................................................................................... 13

*Tremblay v. OpenAI, Inc. et al.*,
   716 F. Supp. 3d 772 (N.D. Cal. 2024) .................................................................5, 10, 13

**Statutes**

17 U.S.C. § 106(3)............................................................................................................... 10

17 U.S.C. § 411(a)............................................................................................................... 13

17 U.S.C. § 412 ................................................................................................................... 13

17 U.S.C. § 1202(b)(1) .................................................................................................. *passim*

17 U.S.C. § 1202(b)(3) .................................................................................................. *passim*

17 U.S.C. § 1202(c) .............................................................................................................. 6, 7

**Other Authorities**

*Distribute*, MERRIAM-WEBSTER ............................................................................................ 10

ROBLOX'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 3:26-cv-02642-BLF

6240603

## I.    INTRODUCTION

As Plaintiff concedes in the three other nearly identical DMCA cases he has brought against different companies, he has, at best, a "novel legal theory." *Beaulier v. NVIDIA Corp.*, No. 5:26-cv-02647-EKL, Dkt. 26 at 4 (N.D. Cal.); *see also Beaulier v. Meta Platforms*, No. 3:26-cv-02632-CRB, Dkt. 29 at 4 (N.D. Cal.); *Beaulier v. Microsoft Corp.*, No. 2:26-cv-01031-JNW, Dkt. 23 at 5 (W.D. Wash.).  In reality, however, his "novel" theory fails to satisfy the plain text of Sections 1202(b)(1) and (b)(3) of the Digital Millennium Copyright Act ("DMCA"), and both claims must be dismissed with prejudice.

Plaintiff stumbles at the first element of both claims, which requires that Roblox "remove[d] or alter[ed]" copyright management information.  By his own allegations, any CMI removal from his 3D assets was an "inherent consequence" of converting them into a machine-readable format for AI training.  But courts have repeatedly held that an inability to preserve CMI is not DMCA "removal."  Plaintiff's attempted pivot to other theories fares no better because his own allegations establish an innocent course of action, not one resulting in liability.  *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 998–99 (9th Cir. 2014).

Nor does Plaintiff adequately allege that Roblox "intentionally" removed any CMI under Section 1202(b)(1).  He theorizes that because Roblox employed a process when converting 3D assets for use in AI training that allegedly happened to remove CMI, Roblox must have intended that result.  But this framing glosses over that the process must have been designed to specifically *target* CMI for removal to give to liability under the DMCA.  CMI removal that occurs as an "unintended side effect" of a uniform technical process, as Plaintiff alleges here, is not intentional removal.  *See, e.g., Logan v. Meta Platforms*, 2023 WL 3668520, at *6 (N.D. Cal. May 24, 2023).

Plaintiff also fails to allege any "distribution" of identical works under Section 1202(b)(3).  He asserts that "distribution" occurred because Roblox (1) internally used transformed versions of his assets to train its models, and (2) commercialized the trained model.  These theories have no support in the case law and are at odds with the statutory text and purpose of the DMCA, especially since Roblox never allegedly sent Plaintiff's assets (with or without CMI) to anyone.

The Complaint further identifies no infringement that any alleged CMI removal would

1

ROBLOX'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 3:26-cv-02642-BLF

6240603

induce, enable, facilitate, or conceal—a defect fatal to both claims. Plaintiff appears to claim that Roblox's purported CMI removal concealed its own infringement from itself, a theory which finds no support in the DMCA or case law (especially because Plaintiff admits he alleges no infringing outputs from Cube 3D at all). His theory that Roblox's "commercialization" of Cube 3D results in infringement fares no better: there is no allegation that Roblox distributed any of Plaintiff's own assets, and his own allegations establish that those assets are transformed into something entirely different before being used in the training process.

Given these legal deficiencies, Plaintiff unsurprisingly also fails to establish standing under Rule 12(b)(1). He cannot establish traceability, since his purported harms are direct consequences of actions taken by Objaverse and Sketchfab, not Roblox. Nor has he alleged any concrete or particularized injury arising from Roblox's conduct, as he disclaims any ability to allege that Roblox ever publicly distributed CMI-stripped versions of his assets or that Cube 3D is capable of producing an infringing output.

Despite his best efforts, Plaintiff cannot transform the DMCA from an anti-piracy statute into a general-purpose attribution statute. The Complaint is legally defective for the reasons identified in Roblox's motion, and because those defects cannot be cured by amendment, Roblox respectfully requests that the Court dismiss the Complaint with prejudice.

## II.    ARGUMENT

### A.    Plaintiff's Opposition Relies on Conclusory Statements and Indiscriminate Citations, Not Specific Allegations that Satisfy Specific Elements.

As a threshold matter, on a motion to dismiss, the Court may not look beyond the Complaint to Plaintiff's papers, and Plaintiff cannot use his opposition, to cure a deficient complaint. *See Karam v. Meta Platforms, Inc.*, 2025 WL 3079048, at *1 n.1 (N.D. Cal. Nov. 4, 2025) (refusing to consider "expanded" allegations and "evidence" proffered in a plaintiff's opposition); *Braun v. Yahoo!, Inc.*, 2018 WL 10809622, at *3 (N.D. Cal. Mar. 28, 2018) ("Arguments in an opposition brief cannot supply the information missing from the Complaint.").

Plaintiff flouts this principle throughout his opposition, defending his Complaint with sweeping mischaracterizations of his allegations and how they satisfy the DMCA's requirements,

2

followed by string cites to dozens of paragraphs of his Complaint. For example, in response to Roblox's argument that Plaintiff fails to allege "removal" of CMI, Plaintiff responds as follows:

> Plaintiff alleges that Roblox obtained the original 3D works from repositories where CMI accompanied them, and then processed those same works into training representations that retained the expressive 3D content while severing the accompanying CMI. Compl. ¶¶ 5, 8, 64–68, 80–88, 92–107, 108–112, 141–151, 160–164. Plaintiff repeatedly alleges what the statute requires: actual removal, alteration, stripping, separation, and severing of CMI. *Id.* ¶¶ 5, 15, 62–63, 87–88, 100–107, 111, 143–151, 160–164.

Opp. 5:6–11; *see also, e.g.*, *id.* 7:19–22, 7:25–27, 8:5–9, 11:19–21, 12:1–4, 14:11–14, 14:20–25, 17:16–23, 18:13–17, 18:24–19:2, 20:9–17; 22:5–7, 23:9–19, 25:8–12.

Rather than directly address Roblox's arguments (grounded in facts as pled), Plaintiff's opposition often attempts to mask the Complaint's deficiencies in broad, conclusory descriptions of allegations paired with indiscriminate paragraph citations. Many of these broad statements try to impermissibly modify what is actually alleged. *See Hoang v. ContextLogic, Inc.*, 2023 WL 6536162, at *23 (N.D. Cal. Mar. 10, 2023) (statements in opposition to motion to dismiss that were not pled in the complaint "cannot save [p]laintiff's claims"). In nearly every case, Plaintiff merely parrots statutory language as allegations he claims satisfies the statutory requirement— *e.g.*, "removal" and "severing." Plaintiff lacks any explanation for how exactly any non-conclusory allegations in his Complaint satisfy these statutory requirements—such as, in this case, the elements of "removal" or "alteration." Plaintiff also lacks any answer for exactly which allegations in these lengthy cites—repeatedly proffered without a single quote from the Complaint—satisfy any element at issue, let alone each element. Without citations to *specific* paragraphs of his Complaint and explanation of how those *specific* paragraphs satisfy *each individual element* of the DMCA, Plaintiff's opposition is entirely unavailing.

  **B.**  **Plaintiff Fails to State a Claim for Relief Under Rule 12(b)(6).**

    **1.**  **Plaintiff fails to plausibly allege actionable removal of CMI.**

      **a.**  **Failure to plausibly allege "removal" of CMI (Counts I and II).**

Under both Sections 1202(b)(1) and (b)(3), Plaintiff must allege that Roblox made an affirmative act of removing CMI. 17 U.S.C. § 1202(b)(1) (prohibiting "intentionally ***remov[ing]***

3

or alter[ing] any [CMI]"), § 1202(b)(3) (prohibiting actions taken with knowledge that CMI "has been *removed* or altered without authority").  Courts have repeatedly rejected attempts to expand DMCA liability for "removal" to encompass mere non-preservation of CMI.  *See, e.g.*, *Logan*, 2023 WL 3668520, at *6–7 (no DMCA liability where thumbnail creation process inadvertently cropped out copyright notice).  But that is exactly what Plaintiff's Complaint seeks: DMCA liability for converting 3D model files into machine-learning inputs, a process through which Plaintiff admits CMI separation is an "inherent consequence."  Compl. ¶ 103.  Format conversion is not an affirmative act of removal and cannot support DMCA liability.  *See* Mot. 7–10.  None of Plaintiff's responses address this fatal deficiency.

Plaintiff first claims that his Complaint alleges more than passive omission and that Rule 8 allows him to set out multiple statements of a claim in the alternative.  Opp. 5.  Not so.  Rule 8(d)(2) permits a plaintiff to plead alternative *causes of action*; it does not permit him to plead alternative, mutually exclusive *facts* in support of a *single* cause of action.  "[P]laintiffs must do more than allege facts that are merely consistent with both their explanation and defendants' competing explanation"; they must allege facts that tend to exclude the non-liability-generating possibility.  *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1105 (9th Cir. 2013); *see also Eclectic Props.*, 751 F.3d at 998–99 (plaintiff cannot present allegations "consistent with both their theory of liability and [an] innocent alternative").  Here, Plaintiff asserts a single cause of action for CMI removal based on three alternative allegations—that Roblox (1) "removed," (2) "failed to preserve," or (3) "disregarded" CMI—only one of which could even potentially give rise to liability.  Compl. ¶¶ 1, 15, 63, 87, 101.  But no allegation in the Complaint shows that Roblox affirmatively removed CMI, as opposed to having purportedly disregarded or failed to preserve it as an "inherent consequence" of converting 3D assets for use in AI training.  The Complaint should be dismissed on this basis alone.

To avoid this dispositive deficiency, Plaintiff points to *Doe 1 v. GitHub* as supposedly sustaining a similar "failure to preserve" theory of removal.  Opp. 5 (citing 672 F. Supp. 3d 837 (N.D. Cal. 2023)).  But the court in *Doe 1* did not hold that a failure to include CMI could support claims under Sections 1202(b)(1) or (b)(3); rather, the *Doe 1* plaintiff alleged that defendants had

6240603

publicly stated they had updated their model to stop regurgitating CMI, after earlier versions *actually* output CMI.  672 F. Supp. 3d at 857–59.  Plaintiff has not alleged that any Roblox model regurgitated CMI, much less that Roblox modified its models after an earlier version did so.

Plaintiff's efforts to distinguish the cases precluding his "failure to preserve" theory are unconvincing.  By his own description, each case he cites holds that no DMCA liability attaches where a defendant "merely omitted" CMI, absent plausible allegations that the removal was an affirmative act.  *See, e.g.*, *Dolls Kill, Inc. v. Zoetop Bus. Co.*, 2022 WL 16961477, at *3 (C.D. Cal. Aug. 25, 2022) ("The DMCA prohibits removing or altering CMI; it does not prohibit merely omitting CMI from an infringing work."); *A'Lor Int'l, Ltd. v. Tapper Fine Jewelry, Inc.*, 2012 WL 12921035, at *10 (C.D. Cal. Aug. 8, 2012) ("omissions" of CMI not actionable).  Plaintiff's claim that Roblox "deliberately processed" copies of his assets "designed to preserve their expressive content … while stripping the accompanying [CMI]" comes without citation or explanation; in fact, the Complaint alleges the *opposite*, admitting that CMI loss was an "inherent consequence" of transforming 3D assets into forms suitable for training.  *Contra* Opp. 6–7.

Plaintiff also cannot sidestep the *Tremblay* and *NYT* decisions cited by Roblox that reject conclusory allegations of removal.  *See* Opp. 7 (citing *Tremblay v. OpenAI, Inc. et al.*, 716 F. Supp. 3d 772 (N.D. Cal. 2024); *The New York Times Co. v. Microsoft Corp.*, 777 F. Supp. 3d 283 (S.D.N.Y. 2025) ("*NYT*")).  As here, the *Tremblay* complaint and The Times's complaint in *NYT* offered only conclusory allegations that the models at issue were designed to remove CMI. *Tremblay*, 716 F. Supp. 3d at 779 (faulting plaintiffs for alleging that OpenAI's models removed CMI "by design" but providing "no facts supporting this assertion"); *NYT*, 777 F. Supp. 3d at 314–15 (faulting The Times's complaint for failing to "include any specific detail on how CMI was allegedly removed during the training process" and including only the conclusory statement that OpenAI's LLMs removed CMI "by design").  Those dismissals stand in contrast to other complaints at issue in *NYT* alleging that content extractors were used for the specific purpose of "'separat[ing] the main article content' from other parts of the website, including 'footers' and 'copyright notices,' [to] allow the extractor to make further copies only of the 'main article content.'"  *NYT*, 777 F. Supp. 3d at 315.  Plaintiff's complaint is squarely in the former camp, not

ROBLOX'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 3:26-cv-02642-BLF

6240603

the latter: he offers no plausible allegations that Roblox developed its training process with the specific goal of removing CMI. To the contrary, he alleges that any removal was an "inherent consequence" and side effect of format conversion[1] from 3D asset files to formats suitable for AI training. Compl. ¶ 103. Such inherent side effects do not, and cannot, result in DMCA liability.

Nor can Plaintiff avoid his own allegation that the primary example of purported CMI in the Complaint is not information on or near the relevant 3D files. *See* Mot. 9–10. He claims that the "NoAI" tag is within sufficient "proximity" to the asset file to be "conveyed in connection" with the assets under 17 U.S.C. § 1202(c) because the tag appears on the same Sketchfab webpage from which a human could download the asset. But the cases he cites in support involve CMI placed on the same page *and* immediately below or around a *photograph*, allegations that he contends are fundamentally different from those here. *See* Opp. 8–9 (citing *Logan v. Meta Platforms*, 636 F. Supp. 3d 1052, 1063 (N.D. Cal. 2022) (identifying information "immediately beneath" a photograph); *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1187–88 (9th Cir. 2016) (copyright information near photographs); *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 299 (3d Cir. 2011) ("gutter credit" running perpendicular and next to a print photograph); *Pac Studios Inc. v. West Coast Backing Inc.*, 2012 WL 12887637, at *2–3 (C.D. Cal. Apr. 18, 2012) ("alphanumeric designation, placed in the border of an online photograph"); *GC2 Inc. v. Int'l Game Tech. PLC*, 255 F. Supp. 3d 812, 821–22 (N.D. Ill. 2017) (trademark notice on artwork)). Plaintiff alleges only that the NoAI tag is an "HTML meta tag within the model's webpage" that is "machine-readable," without reference to proximity to 3D assets or if the tag is conveyed with asset files. Compl. ¶ 55. The tag's separate existence on the model webpage, entirely divorced from the downloaded asset file, makes this case more like those in

---

[1] Plaintiff faults Roblox's voicemail analogy for being an analogy, saying that tone, pauses, and background sounds that would not be carried through in converting a voicemail into written words are "not CMI." *See* Opp. 7 (citing Mot. 9). This obviously misses the point that transcribing a voicemail into words no more "removes" tone, pauses, or background noise, than does converting a 3D model into a numerical format suitable for AI training "remove" CMI.

6

ROBLOX'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 3:26-cv-02642-BLF

6240603

which the purported CMI was located separately from the asset at issue. *See*

*SellPoolSuppliesOnline.com LLC v. Ugly Pools Arizona, Inc.*, 344 F. Supp. 3d 1075, 1083 (D. Ariz. 2018), *aff'd*, 804 F. App'x 668 (9th Cir. 2020) (copyright notice in webpage footer); *Logan*, 636 F. Supp. 3d at 1062 (same).

Plaintiff fails to identify any specific works from which Roblox affirmatively removed CMI. The Complaint alleges only that he published "hundreds" of models, "numerous" of which he later found "referenced" in Objaverse-XL, a dataset of over ten million assets. Compl. ¶¶ 77, 115–16, 124. Contrary to Plaintiff's contentions, this deficiency is fatal to the Complaint, as the dismissals in both cases Roblox cited turned on plaintiffs' failure to specifically identify their asserted works and the CMI removed. *See Andersen v. Stability AI Ltd.*, 700 F. Supp. 3d 853, 872 (N.D. Cal. 2023) (requiring plaintiff to identify "the exact type of CMI included in their online works" which they "have a good faith belief were scraped" into the datasets used to train defendants' models); *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1175 (N.D. Cal. 2019) (requiring plaintiff to "identify which photographs had CMI removed [and] to describe what the removed or altered CMI was"). Without identifying a single work from which CMI was intentionally removed, Plaintiff's allegations of removal remain implausible.

Finally, Plaintiff argues he need not plead that the CMI-stripped works Roblox allegedly used were identical to his asserted works. Roblox recognizes this Court has held there is no "identical copy" requirement for claims under Section 1202(a) (not at issue here). *See Global Weather Prods., LLC v. Al Jazeera Media Network*, 2026 WL 1591091, at *2–3 (N.D. Cal. June 3, 2026). But Roblox respectfully submits that the instant case illustrates why an identicality requirement is necessary to maintain consistency between Sections 1202(b) and (c). Under Section 1202(c), CMI must be "conveyed in connection with copies . . . of a work." Section 1202(b) prohibits removing CMI from that work (or a copy) or distributing "works" or "copies of works" without CMI. If Sections 1202(b)(1) and (3) are read to reach transformed, LLM-compatible inputs—which exist in a completely different format from, and bear no resemblance to, the original work—the relationship between those Sections would be severed. Moreover, the transformation of 3D assets to LLM-compatible inputs is far afield from the untransformed mash-

ROBLOX'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 3:26-cv-02642-BLF

6240603

up videos Al Jazeera compiled in *Global Weather* (or examples in Plaintiff's other authorities) by explicitly cropping out CMI from component videos, stitching them together, and uploading the mash-up to YouTube to monetize it. *Id.* at *1; *see also, e.g.*, *Beijing Meishe Network Tech. Co. v. TikTok Inc.*, 2024 WL 3522196, at *2 (N.D. Cal. July 23, 2024) (declining to dismiss where the accused source code was "strikingly similar" to the original); *Splunk Inc. v. Cribl, Inc.*, 662 F. Supp. 3d 1029 (N.D. Cal. 2023) (same, where source code copied verbatim sans CMI); *ICONICS, Inc. v. Massaro*, 192 F. Supp. 3d 254 (D. Mass. 2016) (same).[2]

Accordingly, Plaintiff has failed to plausibly allege that Roblox "removed" CMI.

### b.    Failure to plausibly allege "intentional[]" removal (Count I).

Section 1202(b)(1) requires any removal of CMI be intentional.  But Plaintiff alleges that any CMI loss occurred as an "inherent consequence" of "convert[ing] the geometry and textures of a 3D model into data structures suitable for machine-learning training."  Compl. ¶¶ 98, 103. As a matter of law, this conduct is not intentional removal or alteration under Section 1202(b)(1) because it occurs as an "unintended side effect" of a uniform technical process.  *Stevens v. Corelogic, Inc.*, 194 F. Supp. 3d 1046, 1052 (S.D. Cal. 2016), *aff'd*, 899 F.3d 666 (9th Cir. 2018); *see also Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999), *aff'd in part, rev'd in part on other grounds*, 336 F.3d 811 (9th Cir. 2003) (same).  That *Stevens* and *Kelly* involved summary judgment does not matter; both describe Section 1202(b)(1)'s pleading standard for intentionality.

Plaintiff claims that "a defendant acts intentionally when it deliberately designs or uses a process that strips or separates CMI from works, even when removal occurs in an automated way."  Opp. 12.  That misstates the law: a defendant acts intentionally only when it designs or uses a process **targeted** at removing CMI, not merely a process that **results** in CMI removal. While Plaintiff glosses over this critical distinction, the cases he cites do not.  In *Kadrey*, plaintiffs sufficiently alleged intentionality because "Meta allegedly knew its AI model was prone to memorizing and outputting CMI . . . , and then took steps to reduce the likelihood that the

---

[2] A pending appeal does not undermine the persuasiveness of *Doe I's* reasoning.  *Contra* Opp. 11.

ROBLOX'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 3:26-cv-02642-BLF

6240603

model would reproduce CMI." Opp. 12 (citing *Kadrey v. Meta Platforms*, 2025 WL 744032, at *2 (N.D. Cal. Mar. 7, 2025)); *see also Doe 1*, 672 F. Supp. 3d at 857–58 (alleging that GitHub knew its models were outputting CMI, and so "trained [its] programs to ignore or remove CMI"). In *NYT* and *The Intercept Media, Inc. v. OpenAI, Inc.*, plaintiffs alleged that OpenAI selected text extraction tools specifically because they were most effective at removing CMI. 777 F. Supp. 3d at 314–15; 767 F. Supp. 3d 18, 29–31 (S.D.N.Y. 2025). Similarly, in *Concord Music Group*, plaintiffs alleged that Anthropic's cofounders chose an extraction tool "specifically because it was more effective at removing CMI" than other tools. 2025 WL 4808984, at *4 (N.D. Cal. Oct. 6, 2025). By contrast, *Logan* did not adequately allege intentionality because the function at issue cropped every photo uniformly, removing CMI in only some instances. 2023 WL 3668520, at *6–7. So too here, Roblox's models operate through a uniform technical process—regardless of the CMI's presence—to convert 3D assets into machine-learning formats. Compl. ¶ 98.

Plaintiff separately contends that *Stevens* and *Kelly* are distinguishable because those cases involved third-party software defaults, whereas "Roblox itself acquired the works and built and deployed its own preprocessing pipeline." Opp. 14–15. That distinction collapses under Plaintiff's own allegations. Plaintiff alleges that Roblox "did not maintain a system capable of tracking, preserving, and reproducing the attribution and licensing information required by [Plaintiff's] licenses on a per-work basis throughout the process by which the works were copied, converted, rendered, normalized, and ingested into AI training inputs." Compl. ¶ 45; *see also id.* ¶ 46 (alleging that "[Roblox's] practices made compliance with the licensing requirements governing those works effectively impossible"). Far from alleging that Roblox built a pipeline targeted at stripping CMI, Plaintiff alleges the opposite: that Roblox's pipeline simply lacked any capacity to track or preserve CMI at all, applying uniformly to every asset regardless of whether CMI was present. That is the same "unintended side effect of the fact that the software platform . . . failed to retain metadata by default" that doomed the plaintiffs in *Stevens*, 194 F. Supp. 3d at 1052–53, and the same uniform, non-targeted process that doomed the plaintiff in *Kelly*, 77 F. Supp. 2d at 1122. Whether Roblox built the pipeline itself, as Plaintiff alleges, or used a third party's software, as in *Stevens*, is immaterial where, as Plaintiff himself alleges, the pipeline was

6240603

incapable of preserving CMI for any asset, rather than designed to target CMI specifically.

Plaintiff does not (and cannot) allege that Roblox knew its models would output CMI, or that Roblox designed its training process *specifically* to remove CMI. He has pled the opposite— that any CMI removal is an "inherent consequence" of the format conversion at issue, Compl. ¶ 103, and thus fails to plead intentionality.

### 2. Plaintiff fails to plausibly allege distribution under Section 1202(b)(3) (Count II).

"Under the plain language of Section 1202(b)(3), liability requires *distributing* the original 'works' or 'copies of [the] works.'" *Tremblay*, 716 F. Supp. 3d at 780 (emphasis added). Plaintiff's opposition brief confirms he alleges no such distribution by Roblox, instead basing his claim on (1) Roblox's internal use of "CMI-stripped copies" or representations of his works, and (2) Roblox's commercialization of Cube 3D, in which Plaintiff's assets played an infinitesimal training role. Opp. 15–16. Yet he fails to cite a single case endorsing either admittedly "novel" theory of distribution, because both stand in stark conflict with the text of Section 1202(b)(3).

As explained in Roblox's opening brief, Plaintiff's "internal use" theory is dead on arrival. "Distribution" means the act of "giv[ing] out or deliver[ing], especially to members of a group." *Distribute*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/distribute (last accessed July 20, 2026). The Copyright Act confirms this ordinary meaning: the exclusive right of distribution is the right "to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 106(3). Courts have similarly defined "distribution" under Section 1202(b)(3) to require a "sale or transfer of ownership extending beyond that of a mere public display." *NYT*, 777 F. Supp. 3d at 318; *see also FurnitureDealer.Net Inc. v. Amazon.com, Inc.*, 2022 WL 891473, at *23 (D. Minn. Mar. 25, 2022) (mere display of works without CMI was not "distribution"). Roblox's "internal use" of "CMI-stripped representations" of works does not amount to public display, much less "giv[ing] out or deliver[ing]" the representations to anyone.

Plaintiff's "commercialization" theory is also fatally flawed. He claims that this theory rests on Roblox's "incorporat[ion] [of] CMI-stripped copies of Plaintiff's works into the training

6240603

datasets and systems behind Cube 3D," the model from which Roblox users can generate their own 3D assets, "which Roblox serves to millions of users and developers through its Mesh Generation API." Opp. 15 (citing Compl. ¶¶ 15, 105). This newfound theory does not plausibly plead any distribution of *Plaintiff's works* without CMI. If anything, it is self-contradictory, disclaiming the need to rely on any Cube 3D outputs allegedly containing his works—*see id.* ("Plaintiff need not identify the precise technical form of each copy or each downstream transfer before discovery into Roblox's proprietary systems.")—while at the same time implicitly assuming such outputs exist to allege "distribution." Plaintiff does not allege (nor could he) that Cube 3D reproduces his works without CMI. As such, Plaintiff's cited cases are distinguishable. *See, e.g.*, *In re OpenAI, Inc. Copyright Infringement Litig.*, 2025 WL 3635559, at *5–7 (S.D.NY. Dec. 15, 2025) (allegations of outputs regurgitating "copies of [plaintiff's] copyrighted works with CMI removed," which "go beyond mere public display and constitute distribution").

Plaintiff cites neither allegations in his Complaint nor relevant caselaw to support his "novel" theory of distribution, which conflicts with the statutory text and requires dismissal of the Section 1202(b)(3) claim. *See Free Speech Sys.*, 390 F. Supp. 3d at 1175 (dismissing claim where complaint lacked plausible allegations of defendant distributing CMI-stripped works).

> **3.  Plaintiff fails to allege any predicate infringement that Roblox's alleged CMI removal would induce, enable, facilitate, or conceal (Counts I and II).**

For similar reasons, both DMCA claims also fail to satisfy Section 1202(b)'s double scienter requirement, as Plaintiff fails to plead that Roblox knew or "had reasonable grounds to know" that its conduct would "induce, enable, facilitate, or conceal an infringement." Mot. 13–15. This requires alleging that a "future infringement is likely, albeit not certain, to occur as a result of the removal or alteration of CMI." *Stevens*, 899 F.3d at 675.

Plaintiff concedes that his Complaint does not allege any likely act of future infringement by any third party resulting from alleged CMI removal, much less allege any infringing output from Cube 3D. Opp. 17. Instead, he asserts the theory that the double scienter requirement is satisfied by allegations of Roblox "conceal[ing] [its] own" infringement by allegedly commercializing the model trained on 3D assets in violation of Creative Commons license terms.

6240603

*Id.*  This novel legal theory of Roblox concealing its infringement from itself makes no sense and is not cognizable.  Taken to its logical end, Plaintiff's implausible theory requires the Court to accept that Roblox concealed its own infringement from itself—or, perhaps, from the public, even though Roblox openly and publicly disclosed that Cube 3D was trained in part on Objaverse-derived assets.  Compl. ¶¶ 108, 110.  Plaintiff never explains from whom the concealment supposedly occurred, or how the world would have looked any different had the CMI remained attached to his works.  Indeed, none of the cases he cites endorses the theory that a defendant can conceal its own infringement where no infringing output is alleged.  Nor do those cases endorse the theory that a defendant knows or has reasonable grounds to know that its actions would facilitate an infringement by mere internal use of training assets from which CMI was allegedly removed.  Roblox is aware of no such case, and Plaintiff provides no reason to start here.  Such a holding would collapse the separate statutory requirements of removal and double scienter.

The cases Plaintiff cites do not support his novel theory.  In each, the plaintiffs alleged specific facts showing defendants were already aware of potential infringement in their models' outputs.  *Kadrey*, 2025 WL 744032, at *2 (plaintiff alleged Meta knew its model was "prone to memorizing and generating outputs of CMI unless CMI was removed from its training data"); *Concord*, 2025 WL 4808984, at *4–6 (plaintiff alleged that defendant's co-founders wrote research papers recognizing that models could regurgitate copyrighted inputs and acted to stop that practice); *NYT*, 777 F. Supp. 3d at 316 (plaintiff alleged that defendant had indemnification policies and admitted its products regurgitated copyrighted materials); *cf. Schneider v. YouTube LLC*, 2022 WL 3031212, at *2 (N.D. Cal. Aug. 1, 2022) (in non-AI case, plaintiff alleged that YouTube knew its video upload process removed CMI, letting third parties post infringing content).  But this is the very output-based theory Plaintiff expressly disclaims.  Opp. 17–18 ("Plaintiff need not allege that Cube 3D generated an output identical to one of his works . . . .").

Plaintiff's commercialization theory is equally unsupported by case law or plausible facts.  He claims Roblox's alleged CMI removal concealed infringement that occurred when Roblox commercialized the model trained on the CMI-stripped works and made it publicly available.  Opp. 19–20.  But that ignores the framework of the DMCA and would, as Roblox discussed in its

12

opening brief, collapse "use" into "distribution." Mot. 13. If accepted, Plaintiff's argument would allow any plaintiff to seek statutory damages under the DMCA for alleged infringement of a work in training a model, while avoiding both the registration requirements and damages limitations of the Copyright Act, and without any plausible allegation that the assets themselves were distributed without CMI. 17 U.S.C. §§ 411(a), 412; *see also Frost-Tsuji Architects v. Highway Inn, Inc.*, 2015 WL 263556, at *3–4 (D. Haw. Jan. 21, 2015), *aff'd*, 700 F. App'x 674 (9th Cir. 2017) (rejecting effort to extend § 1202(b) to include derivative works). Plaintiff cites no case holding that distribution of a trained AI model amounts to distribution of each asset in its training set. Roblox is not aware of any such case. *Tremblay*, 716 F. Supp. 3d at 779 (dismissal appropriate where plaintiff failed to allege "how omitting CMI in the copies used in the training set gave [d]efendants reasonable grounds to know that [the CMI removal] would induce, enable, facilitate, or conceal infringement"). As Plaintiff fails to satisfy the double scienter requirement, both of his DMCA claims should be dismissed.

### C.   Plaintiff Lacks Standing Under Rule 12(b)(1).

Plaintiff's attempt to shoehorn a non-attribution theory into the DMCA is further undermined by his failure to plead standing. Mot. 15–17. Plaintiff's opposition confirms that his Complaint fails to establish the fundamental Article III requirements of traceability and concrete injury. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021).

***Lack of Traceability.*** Plaintiff cannot escape the fact that his alleged injuries lay at the feet of third parties. His alleged harms—narrower access to opportunities, reduced visibility, and stagnant creative motivation—all stem from the inclusion of his works in Objaverse datasets and Sketchfab's failure to prevent indexing, events that predate Roblox's 2025 announcement of Cube 3D by years. *See* Compl. ¶¶ 12, 108, 123–127. Roblox cannot be held responsible for the actions of third parties. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (injury cannot be "th[e] result [of] the independent action of some third party not before the court").

Plaintiff argues these third-party actions are mere "background events" to Roblox's alleged use of his assets. Opp. 24. Not so: the entire section describing his alleged harms recounts actions taken by Objaverse or Sketchfab. *See, e.g.*, Compl. ¶¶ 117 (describing Plaintiff's

ROBLOX'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 3:26-cv-02642-BLF

6240603

dependence on Sketchfab for "public visibility of his published works"), 118 (economic opportunities through his Sketchfab portfolio), 119 (licensing opportunities through CGTrader and Sketchfab), 125 (alleging that Plaintiff "raised concerns . . . with individuals at Sketchfab" about his assets appearing in Objaverse datasets).  That section concludes that "[a]s a result of these developments," *i.e.*, Objaverse's and Sketchfab's actions, Plaintiff took steps to restrict his works and experienced an undefined "loss of creative motivation."  *Id.* ¶¶ 126–127.  By his own account, absent Objaverse's inclusion of his works and Sketchfab's failure to limit scraping, Plaintiff could not have suffered the injuries for which he seeks to hold Roblox responsible.

Plaintiff's "predictable effect" theory of traceability, *see Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019), fares no better.  Even under that framing, the harms he actually pleads— reduced visibility, restricted access, and diminished creative motivation—are alleged as the predictable effect of Objaverse's 2023 publication and Sketchfab's indexing, not of any later conduct by Roblox, which did not announce Cube 3D until March 2025.  Compl. ¶¶ 12, 108.

***Lack of Concrete and Particularized Injury.***  Plaintiff also fails to allege a "concrete injury even in the context of a statutory violation."  *Spokeo v. Robins*, 578 U.S. 330, 341 (2016).  He disclaims any theory that Cube 3D is capable of producing any outputs infringing on his works.  *See, e.g.*, Opp. 18 ("Plaintiff need not allege that Cube 3D generated an output identical to one of his works . . . .").  And as discussed above, Plaintiff does not plausibly plead that Roblox ever publicly disseminated copies of his works without CMI.  *See supra* Section II.B.2.

Plaintiff instead asserts vague allegations of emotional distress and generalized grievances about the market for licensing 3D assets, but none of his cited cases show these allegations are sufficiently concrete or particularized.  The court in *Kadrey* found particularized injury because plaintiffs adequately alleged actual CMI removal that facilitated and concealed actual copyright infringement in outputs.  2025 WL 744032, at *1–2.  The court in *The Intercept* found standing based on allegations tying the DMCA violation to "concerns of downstream infringement" in a model's outputs.  767 F. Supp. 3d at 27–28.  And in *EVOX*, the defendant not only used plaintiff's copyrighted images for training, but had also made images publicly available on its website such that the "images were downloaded by website users without license or authorization

6240603

and later made available on a number of third-party websites." *EVOX Prods., LLC v. Leland Stanford Junior Univ.*, 2025 WL 4690432, at *1, *3 (N.D. Cal. July 23, 2025). Plaintiff has disclaimed any output-based theory of infringement and does not allege that Roblox either republished his assets or allowed third parties to download them without licenses.

For similar reasons, Plaintiff's efforts to distinguish *Raw Story* are unconvincing. He argues that case is unlike his because the plaintiff there failed to allege "that a copy of their work from which the CMI has been removed has been disseminated" and that "defendants there had conceded 'that there are clear historical and common-law analogues' for injuries involving works put into the world stripped of attribution." Opp. 22 (quoting *Raw Story Media, Inc. v. OpenAI, Inc.*, 756 F. Supp. 3d 1, 5–6 (S.D.N.Y. 2024)). But as explained above, Plaintiff has failed to allege any cognizable distribution of his works under the DMCA, much less that Roblox made available his specific assets with the CMI stripped out. *See supra* Section II.B.2.

To the extent Plaintiff separately claims standing to seek injunctive relief based on a "realistic danger" that Roblox will reproduce his works without CMI, *see Doe 1*, 672 F. Supp. 3d at 851–52, that theory fails for the same reason as his damages theory: Plaintiff does not allege that Cube 3D reproduces his works at all, with or without CMI, so there is no "realistic danger" of future reproduction for the Court to enjoin.

Without allegations of distribution or dissemination or infringing outputs, Plaintiff lacks the historical or common-law analogue that other courts have held is sufficient to confer standing. He thus lacks Article III standing.

**D.     The Court Should Not Grant Leave to Amend.**

Because leave to amend would be futile, the Court should dismiss the Complaint with prejudice. Plaintiff asserts a "novel legal theory" that is riddled with legal defects in both claims under the DMCA, not deficient "pleading specificity" as Plaintiff claims. Opp. 25. Plaintiff cannot cure legal defects by amendment, so the Court should deny leave to amend.

**III.    CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiff's Complaint with prejudice.

6240603

Dated:  August 6, 2026

KEKER, VAN NEST & PETERS LLP

By:    */s/ Edward A. Bayley*
  MICHELLE YBARRA
  EDWARD A. BAYLEY
  DEEVA SHAH
  SPENCER MCMANUS
  KEVIN SONG
  LIAM BROWN

  Attorneys for Defendant ROBLOX
  CORPORATION

ROBLOX'S REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 3:26-cv-02642-BLF

6240603